Milk Control Commission of Pennsylvania, Appellant, *v.* United Retail Grocers Association et al.

Argued January 7, 1949. Before Maxey, C. J., Drew, Stern, Patterson, Stearne and Jones, JJ.

*Henry M. Bruner,* with him *T. McKeen Chidsey,*
Attorney General, for Milk Control Commission,
appellant.

*Charles L. Casper,* with him *William J. Fahey,
Louis G. Feldmann, James H. Booser, McNees, Wallace
& Nurick* and *Fahey & Casper,* for United Retail Grocers
Association et al., appellees.

*Willis F. Daniels,* with him *Rose Daniels,* and
*Daniels, Harter & Swope,* for Pennsylvania Association
of Milk Dealers, Inc., interested party, under Rule 61.

OPINION BY MR. JUSTICE PATTERSON, March 21, 1949:
This is an appeal from an order of the Court of
Common Pleas of Dauphin County directing the revo-
cation of a price-fixing order of the Milk Control
Commission.

Pursuant to section 801 of the Milk Control Law, Act
of April 28, 1937, P. L. 417, as amended, 31 PS 700j-801
et seq., public hearings were held by the Milk Control
Commission on July 28, 1947, and August 11, 1947, for
the purpose of receiving evidence on all conditions
affecting the production, marketing and distribution of
milk and milk products in the Scranton area, designated
Milk Marketing Area No. 5.[1] Seeking an increase in

---

[1] Section 801 provides: "The commission shall ascertain, after a
hearing in which all interested persons shall be given reasonable
opportunity to be heard, the logical and reasonable milk marketing
areas within the Commonwealth, shall describe the territorial extent

the spread or markup permitted to grocery stores between the minimum wholesale and retail prices, United Retail Grocers Association, et al., appellees, presented the testimony of three witnesses as to operating costs. Thereafter, on August 25, 1947, the Commission promulgated its Order A-239, effective September 1, 1947, section 5 of which fixes minimum retail and wholesale prices based on a minimum retail price of $.20 per quart for Grade B milk of four per cent butter fat and under, and a minimum wholesale price of $.18 per quart. The effect of this order was to continue without change the $.02 per quart spread permitted to grocery stores under the Commission's previous order.

As stated in its findings, the Commission rejected the testimony before it as insufficient to warrant a change in the spread to stores, because it was "so fragmentary, so speculative and so indefinite, and was based so largely upon opinion and guess, as to make it unworthy of acceptance." The correctness of this conclusion was not challenged by the court below and is not challenged in this Court. Nevertheless, appellees contend, and the court below held, in effect, that section

thereof, shall designate such areas by name or number, and shall ascertain and maintain such prices for milk in the respective milk marketing areas as will be most beneficial to the public interest, best protect the milk industry of the Commonwealth and insure a sufficient quantity of pure and wholesome milk to inhabitants of the Commonwealth, having special regard to the health and welfare of children residing therein.

"The Commission shall base all prices upon all conditions affecting the milk industry in each milk marketing area, including the amount necessary to yield a reasonable return to the producer, which return shall not be less than the cost of production and a reasonable profit to the producer, and a reasonable return to the milk dealer or handler. In ascertaining such returns, the commission shall utilize a cross-section representative of the average or normally efficient producers and dealers or handlers in the area."

5 of Order A-239 is invalid on the ground that, "if the testimony offered by the dealer stores is disregarded, there is no testimony of record concerning the operating costs of these dealer stores, and therefore, the Order of the Milk Control Commission is not supported by any evidence, and is illegal and void."

The order of the court below rests on a misconstruction of the language of this Court in *Colteryahn Sanitary Dairy v. Milk Control Commission of Pennsylvania,* 332 Pa. 15, 1 A. 2d 775. It was there said (p. 21) that "the production of proof before this administrative body is not subject to the strict rules of evidence, and the Commission *may* make its independent survey of the milk industry in the particular area to acquire a just and fair understanding of the problems before it." But there is nothing in the language of the opinion in that case to justify the conclusion that under a proper construction of section 801 the Commission *must* make an independent survey if the evidence before it is insufficient, particularly where the problem before the Commission is not the initial promulgation of an order, but the revision or change of an existing order. Unlike the order involved in the *Colteryahn* case, the order here complained of merely continues in effect the already established differential or rate of return between minimum wholesale and retail prices for stores. As in the public utilities cases, orderly procedure requires that previous orders of the Commission, unappealed from, fixing a minimum price in the case of producers or markup in the case of dealers, including stores, be assumed to be fair, just and reasonable in the absence of proof of a change in factual circumstances. See *Suburban Water Co. v. Oakmont Borough,* 268 Pa. 243, 248, 110 A. 778. A reëxamination is contemplated when conditions change, but the burden is on complainants in such case to show facts or circumstances that warrant

such a conclusion. Section 801 so provides.[2] To hold otherwise would be to say that any disgruntled producer or dealer could reopen the question and shift the burden of proof to the Commission simply by presenting any kind of evidence, however flimsy, preposterous or unreliable. Manifestly this would be contrary to the Act and would impose an undue burden on the Commission and the taxpayers of this Commonwealth. The sufficiency of evidence presented before the Commission for the purpose of inducing a decision that fair return to producers or dealers, as the case may be, requires a revision of established minimum prices or markups, is a matter for the exercise of judgment by the Commission, in the first instance, and its conclusion may not be disturbed unless it has capriciously refused to consider items that should have been entertained, or has entertained items that should not have been entertained, or has not given that weight to the evidence which due process requires: *Colteryahn Sanitary Dairy v. Milk Control Commission,* supra, 22.

The Commission's contention that stores were not intended to come within the term "milk dealer or handler", as used in section 801 of the Act, becomes immaterial in view of the foregoing. In section 103 it is provided: "The following terms shall be construed in this act to have the following meanings, except in those instances where the context clearly indicates otherwise: . . . 'Milk dealer' or 'handler' means any person, *including any store* or subdealer or subhandler, as hereinafter defined, who purchases or receives or handles . . . milk within the Commonwealth for sale . . . *'Store' includes a grocery store,* hotel, restaurant, soda

---

[2] "All provisions of all price-fixing orders of the commission shall be presumed to be valid, and the burden of proving any invalidity of any provisions thereof shall be upon the person asserting the same."

fountain, dairy products store, or any similar mercantile establishment which sells or distributes milk." (Italics supplied.) There being nothing in the context of section 801 clearly indicating otherwise, the term "milk dealer or handler" must be construed to include grocery stores. As to the argument that if grocery stores are held to be included, then all of the many stores in the Commonwealth will have to be bonded or licensed under other sections of the Act, which would be unreasonable, the Act itself furnishes the answer. Under the bonding sections, 501 to 513, inclusive, bonds are required to be filed by milk dealers or handlers who "purchase, acquire or receive on consignment or otherwise milk from producers" and by subdealers and subhandlers. Grocery stores purchasing from other licensed dealers do not fall into either of these classifications. The bonding requirements are intended to apply only in cases where licenses are required, as clearly indicated by provisions for the filing of bonds with applications for licenses. And the Act, in section 402, specifically provides that the Commission shall exempt from the license requirements "stores selling milk, all of which has been purchased or acquired from a licensed milk dealer or handler." Thus, the context of these sections, unlike section 801, indicates that the term "dealer or handler", as therein used, shall not include grocery stores purchasing from other licensed dealers and, consequently, these sections would not apply.

Appellees do not question the validity of their minimum wholesale price or the minimum price to the producer, as fixed by Order A-239, nor do they contend that the findings in support of such minimum prices are not based on competent evidence. At the same time, they have asked that no change be made in the minimum retail price. By what method their markup can be increased within the framework of the Milk Control Law, without

affecting either the minimum wholesale or minimum retail price, is not apparent.

The order of the court below directing the Milk Control Commission to revoke Section 5 of Official General Order A-239 is reversed. Costs to be paid by appellees.