CUNNINGHAM <i>v.</i> SHAW.

7    401|
30 SC ᵌ399|

Where a consideration is essential to the cause of action, it must be stated fully and truly, or the variance is fatal.

Hence, in an action for not honouring and paying bills drawn under letters of credit, where the consideration was averred to be the agreement of B. and H. (third persons) to guaranty and become bound for the repayment of such sums as should be drawn under said letters, and the agreement of the plaintiff to procure such guarantee or security; but the evidence of defendant's assent to the giving of the letters by their agent, showed that B. and H., or the plaintiff, had engaged to make due provision for the drafts; the variance was held to be fatal.

A plaintiff will be nonsuited if his evidence of the contract shows that a paper containing stipulations on his part, is not produced if he has the power to do so.

Hence, where the letter enclosing letters of credit on which the action was brought, also enclosed a paper called a confirmation, to be signed by plaintiff and returned to defendants, and that paper was proved by plaintiff's witnesses to be in court at the trial, and to contain an agreement by plaintiff as to covering the bills to be drawn under the letters, and that paper was tendered to plaintiff's counsel, but not read in evidence by him, the plaintiff was rightly nonsuited.

In error from the District Court of Philadelphia.

*March* 13, 14. Assumpsit against Shaw and others, trading as Thomas Wilson & Co. The plaintiff, in his declaration, averred that he had applied to Gossler, who was the attorney of the defendants, having full power in the premises, for permission to draw bills from Rio de Janeiro, and other ports in South America, on defendants in London, which were to be duly honoured on pre-

sentation, and offered and agreed to give said attorney, or the defendants, a guarantee or security that defendants should be reimbursed their advances, costs, &c., at the usual rates. That said offer was accepted, and the attorney, on behalf of defendants, agreed, when such guarantee was given, he would deliver letters of credit, whereby plaintiff should be authorized to pass drafts within six months from 3d December, 1836, not exceeding £6000, to be drawn at the usual sight, at Rio, &c., and undertook, as attorney of defendants, that such drafts should be duly honoured on presentation; that plaintiff subsequently procured Bevan and Humphreys to guaranty and become bound for the re-payment of such sums, to be drawn by him, with the usual commission, &c. That Gossler, as attorney, &c., accepted the guarantee, and. in consideration thereof, and of the said promises and agreement of defendants, delivered plaintiff two letters of credit, signed by him as attorney for defendants, under the style of Thomas Wilson & Co., in both of which he authorized him to pass drafts, &c., not exceeding £3000, and engaged, on behalf of defendants, under the powers vested in him, that such drafts should be duly honoured on presentation. That plaintiff showed the first of these letters to Maxwell, Wright & Co., of Rio; and, by virtue, thereof, drew certain bills payable sixty days after sight, to order of Maxwell, Wright & Co., who received and took the same on the faith of the said letter of credit. That the same was done under the second letter. That plaintiff having negotiated these bills, defendants became bound to accept and pay the bills when presented for payment and acceptance. That when the bills were presented, the defendants refused to accept the same. That when they became due, they were presented for payment, refused, protested, and returned, with proper notification, to Maxwell, Wright & Co., who took them up. That plaintiff was obliged to pay, and did pay, to M., W. & Co., for expenses, re-exchange, costs, &c., a large sum of money, &c., in consequence of the omission and neglect of defendants to accept and pay the said bills according to their tenor and the terms of the letters of credit; and that, from the making of the bills until the presentment for acceptance and the time of payment, defendants had not in their hands any of the effects of the plaintiff. By means whereof the defendants became liable to pay the plaintiff the sum, &c., being the amount of the exchanges, re-exchanges, interest and costs, so incurred and paid by him.

The second and third counts were founded upon the bills drawn under the first and second letters respectively, being in other re-

spects identical with the first count. The fourth to the twelfth counts, inclusive, were upon bills drawn by plaintiff to order of M., W. & Co., and averred to have been *accepted* by defendants, each bill being separately declared on. The thirteenth count was exactly like the first, with an additional averment of a protest for non-acceptance and notification thereof to plaintiff. The fourteenth count was like the second, and the fifteenth like the third, with the addition of the averment of the protest for non-acceptance and notification: the common counts were also added. The general conclusion averred non-payment of the said several sums of money. Plea, the general issue. In the bill of particulars, the plaintiff stated the various items making up his claim, which consisted of protests, postages, commissions—commissions on settling —and damages, being the difference between the sum at which the bills were negotiated, and the amount re-drawn on M., W. & Co.

On the trial, before JONES, P. J., the plaintiff read a letter from Bevan and Humphreys to Gossler, of December 2, 1836, stating that the former credit of Cunningham had expired, of which, so much as had been used had been remitted by them, and asking a new credit of £6000; "this credit to be, as usual, under our guarantee."

Also a letter from Gossler, in reply to Bevan and Humphreys, dated December 3, 1836, enclosing "the credits;" "also the confirmation which you will get signed, and return to me at your convenience. . . . . . Knowing your usual punctuality, I have not looked to the reimbursement of pending engagements with T. Wilson & Co., and which are no doubt provided for."

He also read the letters of credit of same date with this, containing a stipulation that the bills should be duly honoured on presentation; having proved that Bevan and Humphreys were agents for Cunningham in the business. On cross-examination, the witness identified a paper signed by Cunningham as the one enclosed in Gossler's letter of the 3d December, and referred to by him as the confirmation. This paper was offered to plaintiff's counsel, who did not offer to read it in evidence.

He then proved by one of the firm of Bevan and Humphreys, that they had had numerous transactions of this kind, that the banker's commission was usually *one* per cent., and that it was usual to remit in time to meet the payments under these acceptances. If the draft was there the day before the bills were payable, the remittance was prompt; they never made remittance before acceptance, and never were called on to make such. On cross-examination, he

said : " There was nothing more special in this case than others.
*There was a written agreement between Cunningham and Wilson
& Co., as to covering these bills drawn under the credits in ques-
tion; that agreement is now in the court-room.*"

. The plaintiff gave evidence that the bills had been negotiated to
M., W. & Co., to whom the letters of credit were shown; some of
them were redrawn for, and others paid by the money of M., W. &
Co., in London, who settled with Cunningham on favourable terms;
and it also appeared that there was time for remittance to London
by Cunningham after notice that the bills were refused acceptance.
It was also shown that Wilson & Co. had disavowed the right
of Gossler to draw; but the plaintiff read a letter from defendants
to Bevan and Humphreys, acknowledging the receipt of a letter in-
forming them of the issue of the letters of credit, and saying,
" We have noted these credits, *and also your engagement to make
due provision for all drafts drawn on us in virtue of them.*" It
was also proved that, by the custom of Rio, the payee there was
bound to give security to the holder of bills on notification of non-
acceptance, which had been done in this case, and that Cunningham
had proceeded to Rio with a cargo to protect Maxwell, Wright &
Co., and had paid them the claim for damages, &c., and held the
bills and protests at the time of the trial.

His honour directed a nonsuit.  It is believed this is a suffi-
cient statement, of the facts material to the three questions raised
on the argument, which were :—The variance between the proof and
the *narr.* ; the want of a paper shown to be part of the contract,
and which was in the plaintiff's power at the trial; whether de-
fendants were liable in consequence of Cunningham not having
provided for the bills before maturity.

*Williams*, for plaintiff in error.—The question was, whether,
under the circumstances of the case, the plaintiff was entitled to
recover for the damages paid by him, being the difference between
the proceeds of the bills when negotiated, &c., and the cost of re-
exchange, interest, &c.   It is conceded the defendants were bound
by their letters of credit, and they stipulated that the bills should
be honoured, which means accepted; otherwise they become worth-
less to the holder, between presentation and payment.   In the par-
ticular case, too, it is shown that security had to be provided by the
purchasers on the faith of the letters, and that Cunningham had
paid them.   Nor was the refusal based on the want of remittances,
for they were not usual until maturity, or even a short time after-

wards. There has never been a doubt of the right of the drawer of bills, under a letter of credit, to sue thereon; and Maxwell, Wright & Co., having taken the bills on the faith of the letters, might have sued, (Story on Bills, s. 462,) and Cunningham now has their right. Here, however, he counts on the breach of the letters of credit. In Francis *v.* Rucker, Amb. 672, these damages, under the Pennsylvania statute, were held to be provable against the party bound to accept; and this is corroborated by Riggs *v.* Lindsay, 7 Cranch, 500. So in De-Tastet *v.* Baring, 11 East, 265, if the plaintiff be liable for, or has paid them. McCarty *v.* Barrow, 2 Stra. 949; Chitty on Bills, 308; Curtis *v.* Barclay, 5 Barn. & Cress. 141; McEvers *v.* Mason, 10 Johns. 215; Boyce *v.* Edwards, 4 Peters, 123; Coolidge *v.* Payson, 2 Wheat. 66; where it was held, one promising to accept might be treated as an acceptor; and that non-acceptance is an injury is shown in 2 Met. 403.

It is not necessary that plaintiff should give the whole contract in evidence; a familiar instance of which is a defeasance or condition separate from a bond; but it is settled that he may declare on and prove his part of the contract, leaving the other side to prove his part; Lawes on Pl. 80; Clarke *v.* Gray, 6 East, 567, 569; Cotterill *v.* Cuff, 4 Taunt. 285; 1 Stev. N. P. 370, 13 East, 18; Hotham *v.* East India Co., 1 Term Rep. 645. The question on the pleading becomes immaterial, for a recovery can be had on the common counts; Riggs *v.* Lindsay *ut sup.*; Smith *v.* Brown, 6 Taunt. 340.

*Cadwalader* and *J. M. Reed*, contrà.—These were cases where there had been a provision made. The nonsuit was founded on three sufficient reasons. 1. The papers, in evidence, showed that one was wanting, and that one contained all the agreement which was to be performed by the plaintiff. 2. Because it is a fraud on the accommodation drawee not to provide funds to meet the draft at maturity. 3. Variance.

The first is important as a rule of practice, especially in commercial transactions in which good faith is particularly necessary. Dealings are carried on by letters, and contracts entered into which cannot be explained with fairness, but by all the correspondence; and it should be understood that a party will not be permitted to recover unless he shows the whole. The paper in this case was proved by the plaintiff's evidence to have been sent with the letters of credit to be signed by plaintiff. It was proved by his witness to have been signed, and to be the agreement made by

plaintiff as to the mode of covering these bills.    It was identified in court, and offered for his service.    Will it be permitted that there shall be recovery for non-payment of a bill, by the accommodation party who refuses to let the court know what he had agreed to do.    Where oyer is excused, no profert must be made; but the ground of excuse must be shown, to enable the judge, whether there be a profert or an excuse, to see there is no variance.    In this case the maxim, *suppressio veri est suggestio falsi*, emphatically applies.

·2. The plaintiff's demand is for not paying; but even had it been put upon the breach of the agreement to accept, it would be no stronger·; for it is for liquidated damages, made up of re-exchange, &c., which cannot arise until after maturity.    Had it been for unliquidated damages for not accepting, there would have been a different case.    But for these liquidated damages there could be no recovery, because the plaintiff had not provided for the bills by remittances.    That the non-acceptance was no excuse for this duty, is decided in Stevenson v. Austin, 3 Met. 484.    In Ex parte Metcalfe, 11 Ves. 44, Lord Eldon defines the obligation of a party having an accommodation acceptance to provide against liabilities, which means provide beforehand; that is, he must indemnify by preventative measures; 1 Wms. Saund. ·116; 8 Wend. 452; Bauer v. Roth, 4 Rawle, 99; Kelly v. Evans, 3 Penna. Rep. 387; and the law implies the contract to indemnify; Jones v. Brooke, 4 Taunt. 464—468, Bald. 538; Young v. Hockley, 3 Wils. 346, 2 Chit. Plead. 124; Van-Sandau v. Corsbie, 3 Barn. & Ald. 17; ——— v. Adams, Young, 173; Sparrow v. Chisman, 9 Barn. & Cress. 241; Bradford v. Hubbard, 8 Pick. 157; Richmond v. Heapy, 1 Stark. 160; Laing v. Barclay, 1 Barn. & Cress. 398.    The rule of equity is well settled, that a surety shall not be led into an increased hazard, and the defendants were but sureties until provided with funds.    Re-exchange is the operation of drawing counter to the expected course of dealing, and is onerous to the last degree.    It cannot arise until after maturity; and, as it has been shown, the defendants were not bound to pay for want of provision, Napier v. Shneider, 12 East, 420; Watt v. Riddle, 8 Watts, 545; 10 Met. 378, they are, therefore, not liable for the re-exchange occasioned by the plaintiff's default.    To avoid this difficulty, he avers the indemnity of Bevan and Humphreys to have been the consideration, but that they never agreed to.

3. The *narr.* avers that the defendants were to pay and look to Bevan and Humphreys; but the evidence shows their agreement was

for indemnity, and was collateral merely, and the loan of defendants was of their name merely. Had the paper signed by plaintiff been produced, he would have been entitled to the benefit of the delay afforded by it; but for want of any evidence, particularly when the defendants' letter assumes the contract to provide to be expressly made, he was bound to prove an immediate preparation to provide according to his implied contract. The bill of particulars limits the claim under the *narr.*; 5 Car. & Payne, 340; 2 Brod. & Bing. 682; Williams *v.* Allen, 7 Cow. 316; Webster *v.* Schuyler, 6 Cow. 595; Goodrich *v.* James, 1 Wend. 289; Payne *v.* Smith, 19 Wend. 122; Gilpin *v.* Howell, 5 Barr, 41; and that being for re-exchange, &c., all possible claim for injury by reason of non-acceptance merely is out of the case. Besides, in such event, there must be a special contract and an express assumpsit averred, which has not been done: 1 Taunt. 218; 10 Wend. 487; Saund. Pl. *Ev.* 116, 117.

*Reply.*—The contract of the plaintiff was put an end to by the denial of liability: certainly after that the plaintiff was not bound to remit. Besides, the object of the letters is to avoid that necessity before maturity. The counts are on the defendant's liability under their letters, and that was incurred through their refusal to accept, which prevented the plaintiff providing.

*March* 29. COULTER, J.—After the plaintiff had concluded his evidence, the court below, on motion of defendant's counsel, ordered a nonsuit. We must therefore look through the whole evidence, for the purpose of determining whether, when taken in connection with such fair and legal inferences as a jury might draw from it, the plaintiff was entitled to recover damages or not. This action is not founded on an acceptance of the bills drawn by Cunningham on the house of Wilson & Co., of which Shaw was a member or partner, but, on the contrary, its gravamen consists in a *refusal* to accept according to the promise contained in the two letters of credit granted by the house of Wilson & Co. through their agent Gossler. If the letters of credit were exhibited to Maxwell, Wright & Co., the payees, at the time the bills were drawn by Cunningham—and that seems to be established by the evidence; and were within the scope of the authority to draw—and that also is quite apparent; and were taken *bona fide* on the faith of that letter of credit, it amounted to an acceptance of the bills, so far as regarded Maxwell, Wright & Co.; the letter bearing on its face no condition or qualification; and the payee, after the bills were protested for

non-payment, would have recovered the amount from the house of Wilson & Co. on London. But Maxwell, Wright & Co. chose to waive that remedy, and the bills being returned to them, they looked to Cunningham, the drawer, who adjusted the matter with them, he not having before that time, by remittance or otherwise, made any provision for covering them in London by remittance or otherwise, and not having even given advice to Wilson that they were drawn. Whether he paid Maxwell, Wright & Co. damages, or to what amount, does not appear distinctly in the evidence. Cunningham then proceeds by this action against the house of Wilson & Co. by a special action on the case, to recover damages for a breach of the promise to honour the bills when presented. It cannot be successfully contended that such action may not be supported. The case of Boyce and Henry *v.* Edwards, 4 Peters, 111, seems to settle beyond question or cavil that it can be maintained. If the promise is made upon sufficient consideration, like every other contract, the law will enforce it by suitable and adequate compensation in damages for its breach. The consideration stated on some counts of the declaration is, that a guarantee was furnished, to reimburse Wilson & Co. for all their *advances*, costs, expenses, commissions, &c., at the usual rate; and in other counts the guarantee is alleged to be for the repayment by the plaintiff of the sums to be drawn by him on the firm of Wilson & Co., with costs, &c. But the only evidence which the plaintiff has furnished of the nature and terms of the guarantee is contained in the answer of Wilson & Co. to Bevan and Humphreys, of the 6th January, 1837, in which they state as follows : " We have noted these credits, and also your engagement to make *due provision* for all drafts drawn on us by virtue of them. Here is an essential variance. The consideration averred is a guarantee for advances and costs, &c., or a guarantee for repayment of all sums drawn for; which implies that advances to the amount of the bills, or payment of them, were preliminary to the obligation of the guarantee : whereas, the other necessarily implies that due provision for the bills was to be made by Cunningham, or by Bevan and Humphreys, for him, before they fell due. The precise meaning of the words, " make due provision for the drafts," would depend much upon the custom and usages of merchants at the two ports of London and Rio, no evidence of which was given except by Joseph Cabot, who said he thought if the remittance arrived one day before the bill fell due it was sufficiently prompt. But it must be considered, that an acceptance by the drawee is evidence in law that he has funds in

his hands of the drawer sufficient to meet the bill, which is some proof at least that a reasonable man might understand, by the words " due provision for all drafts drawn," that funds were to be placed in his hands before acceptance; and that would be the good sense of the transaction. But be that as it may, the plaintiff was bound to state the entire consideration, and to state it truly. The whole of the consideration must be stated in the *narr.*; and if any part of an entire consideration, or of a consideration of several things, be omitted, the plaintiff will fail, on the ground of variance: Brooks *v.* Lowrie, 1 Nott & McCord, 342. And where the declaration is for an express or implied contract, the consideration must be stated either in terms or in substance: 1 Chitty's Plead. 295. Where, however, the whole averment may be struck out without destroying the plaintiff's right of action, it need not be proved; but if the whole cannot be struck out without leaving out what is essential to the action, then the averment must be proved, although it is more particular than necessary, or the plaintiff cannot recover: 1 Chitty, 372. The whole of the averment about the consideration here cannot be struck out; and the plaintiff must prove it as laid, but the proof is essentially variant. In addition to this, the evidence shows that Gossler, the agent of Wilson & Co., was not satisfied with the guarantee of Bevan and Humphreys, and that he considered that only as collateral; for when he furnished the letters of credit he sent a written paper, which he required Cunningham, the plaintiff, to sign; and this paper he calls the confirmation, as appears by his letter of the 3d December, at New York, marked D; which letter was produced in evidence by the plaintiff. Cabot, the witness of the plaintiff, testified that the paper was executed by Cunningham, and that it was in court, which he identified as the same paper enclosed in Gossler's letter. · This paper was offered to the plaintiff as part of the contract, but he declined to use it or give it in evidence. Now this was the stipulation or promise of the plaintiff, counterpart to that of the defendant. It was the plaintiff's part of the contract, and might have been material in establishing his right to recover. It might have cleared away all mist and uncertainty from the character of the consideration, and distinctly explained what was meant by the terms, *due provision*, to meet the drafts. This document was the real contract on the plaintiff's part, which in the estimation of defendant's agent was its confirmation, as he expressed himself. The letter of Bevan and Humphreys was merely collateral, and avowedly taken as security only for the performance by plaintiff of his own engagement. Why,

therefore, was it not produced? It is incumbent on the plaintiff to state every material part of his contract which shows his right to recover. The material points of a contract must be averred fully and truly; Stearns *v.* Barrett, 1 Pick. 443 : although immaterial parts which do not bear on the plaintiff's right of action may be omitted. The contract consisted of the letters between the agents of the parties, the letter of credit, and the engagement on the part of the plaintiff; and, when all taken together, may have shown that the promises were concurrent and dependent. In which case it would have been incumbent on the plaintiff to aver and prove a readiness and willingness to perform on his part. And it is material to observe that the plaintiff had shown by his own evidence that there did exist a counterpart of the contract on his part, which he would not produce. It is the province of courts to decide upon light and knowledge, and they will not grope their way in the dark and under a cloud, when the plaintiff has in his possession and power a light that would dispel them, but refuses to show it.

The argument of the counsel for the plaintiff below compared the case to one where a plaintiff holds an absolute deed, and the defendant has a defeasance. But the analogy fails, because the plaintiff, by exhibiting his absolute deed, shows a cause of action unbroken, and good *prima facie* on its face. The court can know nothing of the defeasance until it is either pleaded or given in evidence by the defendant. Nor is it sufficient to allege that the plaintiff's part of the contract merely limited the responsibility, and did not destroy the contract. That may be true; but that is the very question which ought to have been made patent before the court by the plaintiff. And although it did not destroy or defeat the contract, it probably established that the plaintiff had no right to recover, or he would have produced it. It perhaps interposed a condition precedent on his part. At all events he had it in his power, and would not produce it. *We* cannot say that its effect would have been merely to limit the damages, and that therefore it was the province of the defendant to produce it in evidence. The declaration on a recognisance with a condition must set forth the condition: Bridge *v.* Ford, 4 Mass. 641. Same principle decided in Harrington *v.* Brown, 7 Pick. 233. And this corresponds with the just and pervading rule, that the plaintiff who seeks to take money from the defendant ought to show a *prima facie* case, clear of obstruction, according to the material parts of his own contract—parts which might interdict his right, and completely discharge the defendant. The presumption of the law is always

against a party who withholds any testimony in his power, bearing directly on his case. If he had exhibited the confirmation, it is probable a contract would have been disclosed, not covered by any of the fifteen counts in his declaration. The paper was exhibited in the court below, and exhibited here. But as the plaintiff may choose to try his fortune in a fresh suit, I deem it unsuitable to say any thing unnecessarily to obstruct him, or to extend this opinion further. When the plaintiff closed his evidence, the defendant had a right to invoke the judgment of the court upon the law as the facts stood, as there was no dispute about them. He was not bound to become the actor, and take upon himself the burden which properly belonged to the shoulders of the plaintiff. The plaintiff showed that the contract was variant from, and did not substantially conform to, the one declared upon, and refused to give evidence, placed in his power, as to material stipulations on his part. We cannot say, after carefully reviewing the testimony of the court below, that it is wrong, and that the judgment ought to be set aside.

Judgment affirmed.