## Harkins v. Varone, Appellant.

Argued January 25, 1932. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY and DREW, JJ.

*Philip F. Schmehl,* with him *Thomas D. Caldwell,* for appellant.

*Wellington M. Bertolett, W. Russell Green* and *Claude C. Smith,* of *Duane, Morris & Heckscher,* for appellee, were not heard.

PER CURIAM, March 14, 1932:

As the result of a collision of the automobile in which plaintiff was riding with an automobile belonging to defendant, driven by his son, Louis Varone, plaintiff received the injury for which she here claims compensation.

The accident occurred on September 12, 1929, in midafternoon. Plaintiff, with six others, was a guest in the car of Ralph Claypoole, who was driving. The driver had made a left turn from the Amityville Road onto the Boyerstown Pike in Berks County, en route to Reading. Defendant's car, coming from Reading, was behind two other cars which had slowed up, or stopped, to allow the Claypoole car to make the turn, but, instead of following the traffic ahead of him, Louis Varone pulled out to

the left, across the white dividing line, and ran head on into the Claypoole car coming toward him.

We need not refer more particularly to the details of the accident. The facts are not disputed. The one question before this court is whether Louis Varone, at the time of the accident, occupied the position of servant, or agent, of his father, the defendant, who in that case would be responsible for his son's actions. The evidence on the point consisted of a letter written by defendant to one of plaintiff's attorneys as follows: "Replying to your inquiry as to the use of my car by Louis Verone on September 12, 1929, at which time there was a collision between my car being operated by my son, Louis Verone and Mr. Ralph O. Claypoole, this is to inform you that the car was being operated by my son Louis Verone with my permission. My son, at the time of this collision was on his way to visit my sister, in Norristown, Montgomery County, whom he was going to see at my request."

The court below states in its opinion: "The instant case was tried upon the theory that it was for the court to interpret the letter. The record discloses the following: 'It is agreed by counsel that it is for the court to determine whether or not the relation of master and servant, principal and agent, or bailor and bailee, arises out of the letter in question.' Under well-known rule of law, the letter must be construed most strongly against the person writing it. ...... It was, as it states, in answer to an inquiry as to the use of the car at the time of the collision. The word 'use' means employment. It cannot be said that it was written in reply to an inquiry whether the son had permission to use the car, but, on the contrary, how the car was being used or for what purpose it was being operated at the time. It expressly states that the son was going to see defendant's sister at defendant's request. There could be no purpose in the last clause of the letter, 'whom he was going to see at my request,' except to show for whom the trip was being

made. It was defendant's errand and the letter so declares. The trip was made to satisfy defendant in one way or another, and that is sufficient. In the absence of any explanation by defendant, the letter, as it would be commonly understood, indicates to us that the son, at the time of the collision, was the servant or agent of the defendant and engaged in the defendant's business." The conclusion reached by the trial judge was warranted by the writing in question and particularly so since defendant offered no testimony as to the circumstances of the son's visit to his aunt to combat the natural inference to be drawn from the letter. "The presumption of the law is always against a party who withholds testimony in his power, bearing directly on his case": Cunningham v. Shaw, 7 Pa. 401, 410-11; Green v. Brooks, 215 Pa. 492; Steel v. Snyder, 295 Pa. 120, 127-8.

The judgment is affirmed.