Firestone Tire & Rubber Co. and Liberty Mutual Insurance Co., Petitioners *v.* Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board and Michael Smallen, Respondents.

Argued September 11, 1978, before Judges BLATT, DiSALLE and MacPHAIL, sitting as a panel of three.

*John A. Fitzpatrick,* with him *Joseph R. Thompson,* for petitioners.

*Marc S. Jacobs,* with him *Galfand, Berger, Senesky, Lurie & March,* and *James N. Diefenderfer,* for respondent.

OPINION BY JUDGE BLATT, January 25, 1979:

The Firestone Tire & Rubber Company (employer) and its insurer Liberty Mutual Insurance Company appeal here from an order of the Workmen's Compensation Appeal Board (Board) granting total disability benefits to Michael Smallen (claimant).

The claimant was employed for approximately thirteen years as a maintenance mechanic by the employer. In 1966 he sustained a fracture to his right elbow at work but no claim for compensation was submitted under The Pennsylvania Workmen's Compensation Act[1] (Act) at that time. Almost nine years later, in

---

[1] Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §1 et seq.

December of 1974 or January of 1975, however, the claimant reported to the nurse at the employer's dispensary complaining of atrophy of the muscle in his right hand and said that he could not straighten out his right elbow. The nurse testified that he made no mention of any recent injury but that he attributed his condition to the 1966 accident. The employer's physician later examined the claimant and advised him to see his family doctor, which he did, and on or about May 4, 1975, he was hospitalized for a surgical procedure to correct his problem with his right arm. His doctor, Dr. Jaeger, stated in his report that the condition was caused by an injury to the nerve as a direct result of the 1966 accident and that the continued use of the elbow in daily work activity had caused persistent and repetitive minimal traumata to the nerve over the years, resulting in the severe manifestation of "tardy ulnar palsy." On or about May 5, 1975, the claimant filed a sickness and accident claim with his employer wherein he stated that the accident which caused his injury had occurred in 1966.[2] He also filed a claim petition for workmen's compensation benefits in July 1975, alleging that he was disabled from December of 1974 to that time as a result of the continuous use of his elbow in his daily work activity, resulting in palsy of his right arm.

After a hearing, at which both the claimant and the employer testified and submitted evidence, the referee denied workmen's compensation benefits on the basis that the claimant had failed to file a timely claim petition for the 1966 injury and had "failed to prove by sufficient, competent evidence that he incurred a work-related injury in 1974 or 1975 which aggravated

---

[2] The employer paid most of the claimant's medical and hospital expenses and paid $100 per week for the nine weeks he was absent due to the surgery.

or reactivated a previous physical condition.'' The referee held therefore that the claimant was not entitled to compensation under Section 301(c)(1) of the Act. On appeal to the Board, the claimant alleged that the referee had capriciously disregarded Dr. Jaeger's medical report which indicated that the injury was the direct result of the claimant's daily work activities. He also argued that the referee's emphasis on the lack of a recent traumatic injury was in error because his claim petition and the evidence offered concerned an injury which was due to continuous use of his elbow at work. On this basis, the Board reversed and remanded the case to the referee for findings of fact as to the occurrence of an injury due to repetitive trauma. Without taking additional evidence at the hearing then held, the referee, in his second decision on this matter, again denied compensation to the claimant, finding again that the claim was untimely, and holding that the claimant had not sustained a compensable work-related injury in December of 1974 or in January of 1975. On appeal, the Board again reversed the referee, and without hearing further testimony or accepting other evidence, deleted five findings of fact made by the referee and substituted new findings of its own. The employer now appeals from that decision to this Court.[3]

The record here reveals that the Board specifically reversed two of the referee's findings of fact that the claimant failed to establish an occupational injury at any time during the months of December 1974 or January 1975 on the basis that they were inconsistent with the referee's finding of fact No. 11. That finding, which was the only finding of fact as to the cause

[3] The Board remanded the case again to determine whether or not the insurer's prior payments should be subrogated against the award, however, that matter is not before us on appeal.

of the claimant's ulnar palsy and which was affirmed by the Board, was as follows:

> By report dated June 23, 1975, Dr. Jaeger states that the Claimant's 'tardy' ulnar palsy was caused by injury to the nerve which was the direct result of the fracture of the elbow sustained by the Claimant in 1966, and that the continued use of the elbow in daily work activity in the presence of a healed fracture caused persistent and repetitive minimal traumata to the nerve over the years, finally resulting in the severe manifestation of a 'tardy' ulnar palsy.

The Board clearly believed that Dr. Jaeger's report "clearly establishes an injury to the claimant in December of 1974 or January of 1975," and we agree that this finding of fact, based upon unequivocal competent medical evidence, did establish that the claimant's injury was caused by his work activities. It is clear that an injury to be compensable under the Act is not required to have resulted from any sudden occurrence or accident but may be due to daily trauma or a daily aggravation of a pre-existing injury. *Hinkle v. H. J. Heinz Co.*, 463 Pa. 111, 337 A.2d 907 (1975); *Workmen's Compensation Appeal Board v. Hamilton*, 21 Pa. Commonwealth Ct. 425, 346 A.2d 387 (1975). Furthermore, the compensability of an injury is a conclusion of law which is clearly reviewable by the Board. *Holland v. Workmen's Compensation Appeal Board*, 16 Pa. Commonwealth Ct. 367, 332 A. 2d 834 (1975).

The Board also reversed the referee's findings of fact that the claimant did not provide timely notice to his employer of his occupational injury. The referee, having found no work-related injury in 1974, also found that there had been an injury in 1966, and held that the claimant did not provide timely notice to the employer. The referee erred, however, as we

stated above, in concluding the later injury was not a compensable injury. Other findings of fact by the referee established that the claimant had reported this condition to the employer's nurse in December of 1974 or January of 1975. The facts as found by the referee, therefore, as well as the evidence in the record clearly indicate that the claimant did provide timely notice to the employer of the injury. *See Matyuf v. Unemployment Compensation Board of Review*, 32 Pa. Commonwealth Ct. 589, 379 A.2d 1377 (1977).

In addition, the Board deleted the referee's finding (in his second decision) that the claimant had failed to establish that he was totally or partially disabled from May 3, 1975 to July 6, 1975 except during the period of actual hospitalization. There were other findings of fact by the referee, however, which established that the claimant had been hospitalized on or about May 4, 1975, and that "he did not work due at least in part to the hospitalization until July 6, 1975." The record reveals that the findings by the referee in his *first* decision had provided specifically that the claimant was totally disabled during this nine-week period due to the hospitalization, which the Board adopted as its own finding. The referee did not take any additional testimony upon remand and the propriety of the omission of his previous finding on the claimant's total disability during this period in his second decision is consequently questionable, especially in light of the fact that the Board had specifically remanded the case *only* for new findings of fact as to an injury due to a repetitive type of trauma rather than to a single incident. *See Kentucky Fried Chicken of Altoona, Inc. v. Unemployment Compensation Board of Review,* 10 Pa. Commonwealth Ct. 90, 95, 309 A.2d 165, 167 (1973) and

*Milk Control Commission v. United Retail Grocers Association,* 361 Pa. 221, 64 A.2d 818 (1949).

It is agreed that the Board, having reversed these findings of fact, erred in adding its own findings of fact that the claimant "was injured in the course of his employment by trauma to his elbow in December of 1974 or January of 1975, from which he was totally disabled from May 5, 1975 until July 1, 1975" and that the claimant "notified his employer of the aforesaid injury in December of 1974 or January of 1975, by visits to the plant dispensary." While the Board may not make findings of fact on appeal from a referee's decision unless it takes additional evidence, *Workmen's Compensation Appeal Board v. Jones & Laughlin Steel Corp.,* 25 Pa. Commonwealth Ct. 542, 360 A.2d 854 (1976), we have held that the Board commits harmless error in making an additional finding without hearing additional evidence if the new finding is actually encompassed by a finding of the referee. *General Tire & Rubber Company v. Workmen's Compensation Appeal Board,* 16 Pa. Commonwealth Ct. 473, 332 A.2d 867 (1975). We believe that the findings of the Board here were encompassed by those of the referee and, therefore, do not constitute reversible error.

We, therefore, affirm the order of the Board granting workmen's compensation benefits to the claimant.

Judge DiSalle concurs in the result only.

### Order

And Now, this 25th day of January, 1979, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is affirmed in part, consistent with this Opinion, and it is ordered that judgment be entered in favor of Michael Smallen and against the Firestone Tire & Rubber Company and/or its insurance carrier, the Liberty Mutual Insurance

Company in the amount of $106.00 per week for the period from May 5, 1975 to July 8, 1975, inclusive and the amount expended by claimant for medical and hospital payments during that period, plus 10% per annum interest on all deferred compensation.