521 A.2d 146

Paul W. Sheetz, Petitioner *v.* Workmen's Compensation Appeal Board (Firestone Tire & Rubber Company), Respondents.

Argued September 9, 1986, before President Judge CRUMLISH, JR., Judge COLINS, and Senior Judge BARBIERI, sitting as a panel of three.

*Warren H. Prince*, for petitioner.

*James F. Pearn, Jr.*, with him, *Roger E. Legg, Roger E. Legg & Associates*, for respondent, Firestone Tire and Rubber Co. and Travelers Insurance Co.

OPINION BY SENIOR JUDGE BARBIERI, March 9, 1987:
Paul W. Sheetz, Claimant, appeals here the decision of the Workmen's Compensation Appeal Board (Board) which affirmed a referee's decision denying Claimant benefits on three petitions filed by Claimant. As will appear, unfortunately because of the continued delay in this over-extended litigation, we must reverse and remand.

This critically disabled Claimant has undergone three surgical procedures, called "partial hemilaminectomies," for disc protrusions in Claimant's low back at the level of L5-S1. The first of these was honored as work related by the insurer for Firestone Tire & Rubber Company, Liberty Mutual Insurance Company, by Notice of Compensation Payable, dated March 4, 1974 for herniated disc by injury on January 16, 1974, with disability stated as beginning February 13, 1974. Subsequently, there was a final receipt entered into when Claimant returned to work on May 13, 1974, but this was eliminated by supplemental agreements for recurrences, reinstating total disability benefits, all attributed to the January 16, 1974 injury, and each containing an amicable suspension agreement on Claimant's return to work. The last of these supplemental agreements was entered into for a recurrence of total disability as of June 2, 1978, reinstating payments until Claimant returned to work with suspension of benefits as of August 3, 1978. Key factors apparently influencing this litigation arise out of the change of insurers from Liberty Mutual to Travelers Insurance Company as of

July 31, 1977, and the increase in Claimant's pay and, consequently, his benefit rate after that date.[1] Claimant was laid-off August 12, 1979, but compensation payments were not reinstated then or thereafter. On August 22, 1980, Claimant filed three petitions: (1) Petition to Review Existing Agreement averring that a new occurrence on June 1, 1978 caused disability until August 3, 1978; (2) a Claim Petition averring an injury in May of 1978 with disability from May 5, 1978; and (3) a Review Petition averring a new injury as of October 3, 1977, with disability to March 9, 1978. Answers to all petitions were duly filed by Liberty Mutual, asserting non-liability and that it was not on the risk on the injury dates averred and, therefore, was not a proper defendant in the action. Travelers Insurance Company, although not named in any of the three petitions, subsequently became a party of record and no issue has been raised as to the responsibility of Travelers to pay for a compensable disability occurring during the period of its coverage. A motion to amend these petitions was made at trial to have the Claim Petition aver injury on March 10, 1978, one Review Petition averring an injury on October 3, 1977, was amended to aver that the 1977 injury occurred in early September of 1977, and the other Review Petition which averred an injury as of June 1, 1978 was amended to aver that the injury took place on March 10, 1978. It is undisputed that Claimant's average weekly wage in 1977 through 1978

---

[1] Disability from a new injury after July 31, 1977, either unrelated to the injury of January 16, 1974, or an aggravation of that prior injury, would be compensated on the basis of the wages being paid to Claimant at the time of the subsequent injury. The compensation rate for the 1974 injury was paid at $106.00 per week, agreed as the "Maximum Allowable." The parties stipulated that the Claimant's average weekly wage in 1977 and 1978 was $264.85, on which the compensation payable weekly would be $176.57.

was $264.85 which would yield a compensation rate of $176.57, whereas the compensation rate set forth for compensation payable for the injury of January 16, 1974 is $106.00.[2]

At the several hearings before the referee, Claimant's 'witnesses were himself, a fellow worker, Thomas Schrump, and Gregory J. Lignelli, M.D., the operating neurosurgeon who had Claimant under his care since the 1974 accident. Defendants called Norman F. Hess, Jr., former Labor Relations Manager for Firestone, William J. DeLong, supervisor for Firestone and Mark Lukas, employee of a Vocational Rehabilitation Company. No medical witness was called for the defense, although there appears throughout the testimony the name of Dr. Diaz, Firestone's plant physician who apparently saw and advised Claimant throughout his continuing back problems following the injury of January 16, 1974[3] and who referred Claimant for treatment and surgery to Dr. Lignelli.[4]

The referee made findings indicating a lack of adequate notice of injuries suffered after the 1974 injury

---

[2] See Footnote No. 1, above.

[3] It is uncontested that Claimant had no back complaints before the herniated disc injury of January 16, 1974.

[4] The failure to call Dr. Diaz leaves the record without certain available medical testimony as to Claimant's back complaints in the Employer's medical clinic from January 16, 1974, when Claimant was first injured, until his lay off on August 12, 1979; this evidence would also be important as to notice to Employer of injuries and disabilities following January 16, 1974. This failure to call Dr. Diaz, of course, raises the inference that his testimony would be adverse to the Employer and its insurers. *Ferne v. Chadderton,* 363 Pa. 191, 69 A.2d 104 (1949); *Harkins v. Varone,* 306 Pa. 376, 159 A. 860 (1932); *Holshue v. Workmen's Compensation Appeal Board (Robideau Exp.),* 84 Pa. Commonwealth Ct. 253, 479 A.2d 42 (1984); *Mahoney v. F. M. Roofing Co.,* 135 Pa. Superior Ct. 498, 5 A.2d 812 (1939).

and lack of sufficiently unequivocal medical testimony to support work relationship of injuries and disabilities after the 1974 liability. He dismissed all three of claimant's petitions and the Board affirmed, and, of course, denied an award of counsel fees. This appeal followed.

Our scope of review is limited to a determination of whether constitutional rights have been violated, whether an error of law has been committed, or whether the referee's critical findings of fact are supported by substantial evidence. *Estate of McGovern v. State Employees' Retirement System,* 512 Pa. 377, 517 A.2d 523 (1986); *Kear v. Workmen's Compensation Appeal Board (Fairman Drilling Co.),* 102 Pa. Commonwealth Ct. 193, 517 A.2d 586 (1986).

First and most basic in this case is that there is an outstanding suspension created by agreement as to the original back injury in 1974. In order to terminate such suspended and existing liability, the burden would be upon the employer to establish termination and, of course, defendants in this case did not adduce any medical testimony, nor do we find other evidence which would warrant the apparent termination of liability for the 1974 injury which is to some extent deemed to be a forerunner or basic background factor to Claimant's subsequent episodes of disability for which he filed petitions. Indeed, there is evidence in the record that the 1974 injury is at the root of all of Claimant's back troubles.[5]

---

[5] Dr. Lignelli's testimony includes the following:

Q. Then, Doctor, assuming that he was doing well subsequent to 1974 and that you didn't see him again until 1977, do you have an opinion again based on a reasonable degree of medical certainty as to whether Paul's problems in the fall of 1977 arose as a reoccurrence of the 1974 problem or an aggravation resulting from a new incident?

A. This question is not simplistically answered. First of all, Paul re-ruptured the same disc level in 1977 that he

In *Busche v. Workmen's Compensation Appeal Board (Townsend & Bottum, Inc.),* 77 Pa. Commonwealth Ct. 469, 466 A.2d 278 (1983), where lighter work was provided by the employer with no diminution

---

did in 1974. They were both at L5-S1 level. I believe that the pain-free interval between '74 and '77 or the period of time that he continued to work after he was discharged in '74 makes you temporarily in space. I believe that a new incident occurred which precipitated the disc fragments to extrude in '77.

Nonetheless, the original injury left him with a disc that was probably more prone to rupture in 1977.

Q. Doctor, in your opinion, which I assume is a medical opinion which you hold with a normal degree of reasonable medical certainty, isn't it true that given what happened to Paul Sheetz in 1974—namely the laminectomy that he had—that the subsequent experiences that he had with the L5-S1 were the normal progress of the pre-existing physical defect that he carried from that time on?

A. I would say, yes, only given new stresses. I think that without the new stresses, the re-extrusion of the fragments, the second and third time would not have occurred. So that I don't think it's the natural history after removing the torn fragments for them to spontaneously continue to extrude. I think additional stresses were required.

In response to questions by the referee, Claimant testified:

Q. Has your low-back condition changed at all between the date of the initial incident, I believe January of 1974?

A. Has it changed?

Q. To the present time?

A. To some extent, yes.

Q. In what way has it changed?

A. I don't have quite as much pain there as I had before in the leg . . . most of the lower back and my left leg. My leg doesn't fall asleep quite as often.

Q. Had you any problems with your back or your left leg prior to January '74?

A. No.

in wages and then such work was discontinued, as in this case, we held that "proof of the discontinuances of such employment is Claimant's only burden." We stated:

> In this case, . . . Claimant simply must show that, while his disability has continued his loss of earnings has recurred.

---

Defendants' witness, Norman F. Hess, Jr., Labor Relations Manager for Firestone, testified as follows:

Q. Well, don't the records reflect that many of his complaints to the dispensary and various personnel were repetitive?

A. About his back?

Q. Yes.

A. Oh yes, from '74 or '75 on he continued to complain about back problems. It was . . . That never ceased to the best of my knowledge.

. . . .

Q. And isn't it true that at that same meeting Mr. Sheetz advised you that he had been having problems with his back for some time?

A. Yes. He said back to '74.

Q. O.K. But didn't he also advise you that it had flared up recently at that meeting?

A. He said that's why he was absent, because it had flared up. That's how he reported off.

. . . .

Q. But he also continued to say that that was the result of the factory injury?

A. The one that occurred back in '74 or '75 in there, yes.

Q. But, of course, your note doesn't say '74 or '75 does it?

A. No, but the minutes you were reading do.

Q. Those minutes also indicate that there were 4 or 5 injuries, don't they?

A. Yes. Or 4 or 5 flare-ups, whatever you want to call it. Yes.

Q. I believe the words in the minutes were injuries.

We conclude that liability for the 1974 disc herniation is still preserved by the suspension agreement which has not been terminated or otherwise affected by final receipt, by the termination order or by these proceedings.

Also, although the petitions as filed in this case do not address the issue as to the 1974 liability,[6] there can be no doubt that this uncontested disability can be addressed regardless of the averments contained in the present petitions. *Bell Telephone Co. v. Workmen's Compensation Appeal Board (Rothenbach)*, 98 Pa. Commonwealth Ct. 332, 511 A.2d 261 (1986); *Mosgo v. Workmen's Compensation Appeal Board (Tri Area Beverage, Inc.)* 84 Pa. Commonwealth Ct. 316, 480 A.2d 1285 (1984); *Pittsburgh Press Co. v. Workmen's Compensation Appeal Board (Pecora)*, 82 Pa. Commonwealth Ct. 538, 475 A.2d 972 (1984). In *Pecora*, we stated:

> It has long been the rule in workmen's compensation cases that the form of the petition filed is not controlling where the facts warrant relief, and that if a claimant is entitled to relief under any section of the Act, his petition will be considered as filed under that section. (Citations omitted).

82 Pa. Commonwealth Ct. at 540, 475 A.2d at 973.

---

A. His union representative said he was operated on by Dr. Lignelli and I asked was it Workmen's Comp, the operation. And then Paul said yes, in '73 or '74.

Q. Well now, Mr. Hess, a couple questions before that, didn't you ask him factory injury, to which he responded, according to the notes, 'I had a continuous number of injuries 4 or 5 times?'

A. That's right.

Q. He, therefore, did say injuries?

A. He said I had come back off injuries 4 or 5 times.

[6] We note that there is no finding of fact or conclusion of law that the disability from the 1974 injury has ever ceased.

We come now to the question of whether or not the existing findings are supported by substantial evidence. The key finding, No. 13, reads:

13. The opinions of Claimant's expert medical witness, Gregory J. Lignelli, M.D., Board certified in neurological surgery, was not sufficiently unequivocal to establish that the disc herniations detected in October 1977 and August 1980 were causally related to Claimant's employment, particularly in view of Dr. Lignelli's lack of knowledge of a bicycle accident occurring in September 1977 resulting in low back and leg pain, and Dr. Lignelli's incorrect understanding that Claimant initially injured his low back in January 1964 as a result of heavy lifting, and an incorrect hypothetical question posed to Dr. Lignelli that he was to assume as true that Claimant was doing well subsequent to the 1974 surgery and that Dr. Lignelli did not see him again until 1977, both of which are incorrect, and the equivocal nature of Dr. Lignelli's opinion including use of qualifiers such as probably, consistent with, and compatible with.

First of all, there is no medical testimony or other competent evidence in the case to attribute the disability for which claim is made to the bicycle incident or to any incident other than Claimant's experience while at work for Firestone.

We find equally erroneous the referee's determination in his finding of fact No. 13 that Dr. Lignelli's opinion "was not sufficiently unequivocal to establish that the disc herniations detected in October 1977 and August, 1980 were causally related to Claimant's employment," and a further comment that Dr. Lignelli's opinion is equivocal because it included "use of qualifiers such as probably, consistent with, and compatable with." Also, we note that there is no finding or conclu-

sion of law ruling out as work-related the disc protrusion caused by Claimant's employment in 1977, but only the conclusion that Claimant "failed to prove by sufficient competent evidence that he sustained an injury on March 10, 1978, or at any time in 1978, arising in the course of his employment for defendant employer and related thereto within the meaning of Section 301(c)(1) of the Act." Contrary to the referee's conclusion, this Court has ruled that an opinion of a medical witness that the herniation of an inter-vertebral disc was "compatible with" the injury adequately met the standards for unequivocal medical testimony as laid down in *Astro Remodeling v. Workmen's Compensation Appeal Board (Julye)*, 80 Pa. Commonwealth Ct. 552, 471 A.2d 1320 (1984). *Philadelphia College of Osteopathic Medicine v. Workmen's Compensation Appeal Board*, 77 Pa. Commonwealth Ct. 202, 465 A.2d 132 (1983). In *Astro*, the following appears:

> The petitioners argue, of course, that the expert's opinion fails to meet the legal test articulated above because he stated that:
>
> I think that over that year the injury that he sustained to his back produced the degeneration process that continued over the year that when he finally became active the disc actually bulged and herniated and I therefore feel that *it is compatible with his injury* of December 1976, or December 1975. (Emphasis added.) (Citation omitted.)
>
> The petitioners argue that, because the expert uses the word 'compatible', the opinion fails for want of certainty. A plain reading of Philadelphia Osteopathic College, however, allows the witness to admit to 'uncertainty', or 'doubt', 'so long as the witness does not recant the opinion.' Id. We believe, therefore, that the opinion was clearly

within the acceptable parameters of Philadelphia Osteopathic College.

80 Pa. Commonwealth Ct. at 556-7, 471 A.2d at 1322-3.

We have also held that a medical witness' testimony that a herniated inter-vertebral disc "would be *consistent with* an injury" (emphasis added), was sufficiently positive to establish causal relationship. *Westmoreland Casualty Co. v. Workmen's Compensation Appeal Board (Lee)*, 36 Pa. Commonwealth Ct. 307, 387 A.2d 683 (1978).

It goes without saying, of course, that in making determinations on whether or not the medical testimony is sufficiently positive to support findings and an award, it is necessary that the testimony be viewed as a whole, rather than mere excerpts which support one or another concept. *Lewis v. Commonwealth*, 508 Pa. 360, 498 A.2d 800 (1985); *Bethlehem Mines Corp. v. Workmen's Compensation Appeal Board (Plutch)*, 97 Pa. Commonwealth Ct. 346, 509 A.2d 942 (1986); *Haney v. Workmen's Compensation Appeal Board (Patterson-Kelley Co., Inc.)*, 65 Pa. Commonwealth Ct. 461, 442 A.2d 1223 (1982). In *Bethlehem Mines,* we stated:

It is well-settled that there are no 'magic words' the doctor need recite to establish causation, only that the opinion *as a whole* contains the requisite level of certainty so as to be described as unequivocal. [Citations omitted.] . . . Our review of the testimony *as a whole* persuades us that Dr. Coppula's unequivocal medical opinion was that the precipitating cause of decedent's heart attack on March 23, 1981, was decedent's work-related duties. (Emphasis added.)

97 Pa. Commonwealth Ct. at 350-1, 509 A.2d at 944-5.

In *Haney,* where we affirmed a referee's disallowance, we stated:

Based upon our decision in Rosenberry, [Brothers Lumber Co. v. Workmen's Compensa-

tion Appeal Board (Price), 36 Pa. Commonwealth Ct. 283, 387 A.2d 526 (1978)] we hold that the proper standard should be whether, based upon a thorough review of the entire record, the medical testimony, taken as a whole, was sufficiently unequivocal to support a finding for the claimant; the claimant should not be denied benefits solely because of his physician's choice of words. See Wilkes-Barre, City v. Workmen's Compensation Appeal Board, 54 Pa. Commonwealth Ct. 230, 420 A.2d 795 (1980).

65 Pa. Commonwealth Ct. at 465-6, 442 A.2d at 1226. In *Lewis* the Supreme Court stated:

In conducting such review the medical witness's entire testimony must be reviewed and taken as a whole and a final decision 'should not rest upon a few words taken out of the context of the entire testimony.'

508 Pa. at 366, 498 A.2d at 803.

In light of these standards and our study of the record in this case we conclude that Dr. Lignelli's testimony is adequately unequivocal as to the work relation of Claimant's injuries in 1977 and 1978. At various points in his deposition testimony he expressed the following opinions:

Q. Doctor, given the facts as stated by Paul Sheetz regarding an incident occurring in September of 1977, do you have an opinion based on a reasonable degree of medical certainty as to whether or not the facts as stated by Mr. Sheetz were consistent with the problems for which you treated him?

A. I do. I believe Mr. Sheetz told me he was lifting at work and the things that we found and subsequently treated were entirely compatible with that lifting.

. . . .

Q. And again, Doctor, do you have an opinion as to the relationship of the problems Paul had in March of '78—and I might add or the absence of a relationship—to his problems in 1974?

MR. LEGG: Objection

A. I believe that Paul ruptured a disc in '74 as a result of lifting, and I believe again in '77 as a result of lifting. I think that his new complaints of back pain again occurred because of lifting.

BY MR. PRINCE:

Q. When you say new complaints, are you referring to '78?

A. Yes. Each one was a separate event.

. . . .

Q. Doctor, in your opinion, which I assume is a medical opinion which you hold with a normal degree of reasonable medical certainty, isn't it true that given what happened to Paul Sheetz in 1974—namely the laminectomy that he had —that the subsequent experiences that he had with the L5-S1 were the normal progress of the pre-existing physical defect that he carried from that time on.

A. I would say, yes, only given new stresses. I think that without the new stresses, the re-extrusion of the fragments, the second and third time would not have occurred. So that I don't think it's the natural history after removing the torn fragments for them to spontaneously continue to extrude. I think additional stresses were required.

. . . .

BY MR. DI DOMENICIS:

Q. A few minutes ago you testified that the work that the Claimant did at Firestone basically was the cause of the reason why you had to oper-

ate on him the second time in 1977. Now, were you speaking about the work which the Claimant did from 1974 up to let's say 1977—the early part of 1977—or were you speaking about the particular incident which the Claimant complained about in the late summer or early fall of 1977?

A. I think the particular incident.

. . . .

BY MR. LEGG:

Q. . . . The incident or the operation, the disc tear that occurred that you discovered in October of '77, do you have an opinion based upon a reasonable degree of medical certainty whether that disc tear was the result of one incident or indeed was the result of a course of work from 1974 up to that time in which leavy [sic] was done everyday?

A. I think that the single event was the one where the disc was extruded. I think that he suffered stress during the period from '74 to '77, but none of those incidents were ones that ruptured the fragment.

Additionally, we must take issue with the referee's apparent rationale that somehow failure of the Claimant to pinpoint by specific dates, and by specific events on those dates, constitutes a lack of sufficient proof of a compensable injury. Our decisions have been to the contrary. *Beaver Supermarket v. Workmen's Compensation Appeal Board (Sheldrake)*, 56 Pa. Commonwealth Ct. 505, 424 A.2d 1023 (1981); *Firestone Tire & Rubber Co. v. Workmen's Compensation Appeal Board (Smallen)*, 40 Pa. Commonwealth Ct. 142, 396 A.2d 902 (1979).

In *Beaver Supermarket,* we stated:

The referee did not base the grant of benefits on an injury of March 22, 1977, but on the cumula-

tive daily aggravation of the pre-existing back condition. This finding is in accord with our decision in Firestone Tire & Rubber Co. et al. v. Workmen's Compensation Appeal Board, 40 Pa. Commonwealth Ct. 142, 396 A.2d 902 (1979). There, the claimant sustained a work-related injury to his elbow in 1966 which did not result in any loss of earnings. In 1974, the claimant complained of atrophy of the muscle in his right hand and filed a claim petition. This Court affirmed the Board's award of benefits (which had been denied by the referee) holding that the claimant suffered an injury due to 'repetitive trauma.' Notwithstanding the fact that the claimant could point to no specific work-related injury other than the incident in 1966, we held that: 'It is clear that an injury to be compensable under the Act is not required to have resulted from any sudden occurrence or accident but may be due to daily trauma or a daily aggravation of a pre-existing injury.' Id. at 146, 396 A.2d at 904. In the instant case, the Claimant truly had no disabling injury until the spinal fusion operation occurred, but each day of work subsequent to the injury sustained in 1969 was a recurring daily aggravation of a pre-existing injury compensable under our holding in Firestone Tire & Rubber Co. et al. v. Workmen's Compensation Appeal Board, supra.

56 Pa. Commonwealth Ct. at 509, 424 A.2d at 1025.

In *Workmen's Compensation Appeal Board v. Bernard S. Pincus Co.,* 24 Pa. Commonwealth Ct. 655, 357 A.2d 707 (1976), *aff'd,* 479 Pa. 286, 388 A.2d 659 (1978), we stated:

This Court has repeatedly held that where a decedent, as here, was performing his usual job as-

signment at the time of his fatal heart attack, and the connection between his work and the heart attack was supported by testimony of a physician, that the death was directly related to his work, decedent's claimant was entitled to benefits. (Citations omitted.)

24 Pa. Commonwealth Ct. at 656, 357 A.2d at 708.

Of course, the medical testimony is not contested that Claimant has been totally disabled throughout this period, after August 12, 1979, when he was laid off from his light work duties.

Finally, we must record our disagreement with the referee's apparent view that some form of specific notice, again pinpointed as to precise date, must have been established by Claimant.[7] Our Supreme Court and this Court have ruled to the contrary. In *Katz v. Evening Bulletin,* 485 Pa. 536, 403 A.2d 518 (1979), in reversing our decision denying benefits, 30 Pa. Commonwealth Ct. 27, 372 A.2d 1262 (1977), the Supreme Court stated:

> While appellant admits that this notice was not 'letter perfect,' we adopt the reasoning of the Superior Court that 'a meritorious claim ought not, if possible be defeated for technical reasons and . . . technicalities are not looked upon with favor in compensation cases (citations omitted).' Wilkinson v. United Parcel Service, 158 Pa. Super. 22, 31, 43 A.2d 408, 412 (1985). Indeed,

---

[7] Notice Finding No. 16.

Claimant's complaints to the dispensary in 1977 and 1978, and histories related by Claimant to Dr. Lignelli during said years and thereafter, and Claimant's statement to his supervisors, and his testimony do not evidence the occurrence of specific events of injury in early September 1977, or September 1977, or October 3, 1977, or March 10, 1978, or late April-early May 1978, or June 1, 1978.

the Legislature has since amended Section 311 *to eliminate the notice requirement where the employer knows of the injury.* Act of March 29, 1972, P.L. 159, 77 P.S. §631. As Judge Crumlish noted in his dissent from the Commonwealth Court's decision,

. . . .

'Thus, although Claimant may not have given full and complete notice directly to his employer, the employer nevertheless had actual, timely knowledge of all the information which Claimant was required to supply.' (Citations omitted.) (Emphasis added.)

485 Pa. at 541, 403 A.2d at 520.

In *Beaver Supermarket,* we stated:

In the instant case, Claimant testified that he had discussed his back problems with his employer on a number of occasions. It is clear that the Employer was aware of the Claimant's medical history of back pain since the Employer's workmen's compensation insurance carrier had paid all of Claimant's medical costs incurred for treatment of back pain since 1969.

The Employer argues that it received no notice of any injury on March 22, 1977. The Employer chooses thereby to ignore Claimant's contention that his disability resulted from continual aggravation of a pre-existing back problem. The Employer was clearly aware of Claimant's belief that his work was causing damage to his back. The referee's finding of notice is based on substantial evidence and will be affirmed.

. . . .

The Employer's sole contention on the merits appears to be that no unusual injury or accident occurred on March 22, 1977. This is hardly a vi-

able challenge and casts no shadow of doubt on Claimant's unequivocal medical evidence. We will affirm the grant of attorney's fees.[8]

56 Pa. Commonwealth Ct. at 510, 424 A.2d at 1025.

We conclude that the referee erred in his determination as to notice.[9]

Accordingly, we will order the case remanded for consideration of whether or not, and to what extent, continuing benefits are due by virtue of the original back injury of January 16, 1974, and for the purpose of re-evaluation of the testimony as to Claimant's subsequent disabling back problems in the light of the standards for determining unequivocal proof as described herein.

## ORDER

NOW, March 9, 1987, the order of the Workmen's Compensation Appeal Board, as of No. A-85751, dated April 11, 1985, is vacated and this case is remanded for proceedings consistent with those expressed in the foregoing opinion.

---

[8] We note that counsel fees, deemed not justifiable here, referee's 4th Conclusion of Law, were approved as awarded for unreasonable contest in *Beaver*.

[9] *See* Footnotes, above, Nos. 4, as to Dr. Diaz, and 5, as to Hess' testimony, as to notice.