Divine Providence Hospital and United States Fidelity and Guaranty Insurance Company, Petitioners *v.* Workmen's Compensation Appeal Board (Bonner), Respondents.

Argued May 11, 1983, before Judges ROGERS, BLATT and CRAIG, sitting as a panel of three.

John M. Humphrey, Murphy, Mussina, Harris, Travis, Rieders & Humphrey, for petitioners.

John R. Bonner, Casale & Bonner, P.C., for respondent, Robert A. Bonner.

Robert A. Seiferth, Liebert, Short, Fitzpatrick & Lavin, for intervenor, Pennsylvania Manufacturer's Association Insurance Company.

OPINION BY JUDGE ROGERS, July 19, 1983:

The appellee who was the claimant in this workmen's compensation case was employed by a hospital as an emergency room physician, working ten or fourteen hour shifts every two days. The duties of his employment required him to stand or walk much of his working time. He suffered from a condition called Charcot's foot, a disease of the nerves of the lower extremities which causes the deterioration of the bones of the feet, the arches to collapse, the feet to flatten, and other deformity. The appellee also suffered from an arterial insufficiency in the lower limbs. These conditions were not caused by his employment.

The appellee's claim for workmen's compensation benefits was based on his and his treating physicians' opinions, duly placed in the record: that the long periods of standing and walking in shoes or slippers, which could not be made comfortable, aggravated the claimant's preexisting conditions of Charcot's foot and arterial insufficiency and caused an ulcer to develop on the right foot in about July 1979; that the ulcerous condition worsened and the pain in the right foot increased to the point that the appellant was required to be hospitalized August 27, 1979, and after

the failure of treatment, his right foot was required to be, and was, amputated in January, 1980; that the ulcerous and painful condition of the right foot rendered the appellee totally disabled as of August 27, 1979, and thereafter. The referee found the facts as to the history of the appellee's work experience and of his illness to be as we have related them; that there was no specific incident which lead to the eventual amputation of the right foot; that each day's work during which pressure was exerted upon the diseased foot, was an injury; and that the date of injury was the last day the appellee was able to work, August 27, 1979. The referee thereupon concluded that the appellee's disability was work-related and compensable and that compensation was payable by the appellant, United States Fidelity and Guaranty Insurance Company (USF&G) which was the hospital's insurance carrier on August 27, 1979, the date of injury. The Workmen's Compensation Appeal Board affirmed the substance of the referee's award and this appeal by USF&G followed.

The appellant, USF&G, became the hospital's workmen's compensation insurance carrier on August 16, 1979; another company had the coverage before that date. It presents two questions: first, that the record does not support the referee's finding that the appellee's injury occurred on August 27, 1979, and that the referee should have found that the injury occurred sometime in July 1979 when the ulcer was discovered; and second, that the claimant should not have been awarded compensation for any period after November 19, 1980 because on that date his doctor testified that appellee would then be able to return to work if his left foot were not also affected by Charcot's foot and arterial insufficiency. We believe that neither question has merit.

As to the USF&G's question asserting error in the referee's finding that the date of injury was August 27, 1979, instead of some earlier date when another carrier had the coverage, the issue would seem to be that of whether there is substantial evidence supporting the referee's finding. The referee explained the finding as grounded on the fact first, that the appellee's preexisting conditions of Charcot's foot and arterial insufficiency were growing worse; second, that there was no event such as a fall to mark the time of injury; third, that at some time there was an ulcer but that no specific date of its appearance could be given by the doctors; and, finally, that the case is one where there was daily aggravation of a preexisting condition to which each day's work contributed, including his last day of work.

The case of *Beaver Supermarket v. Workmen's Compensation Appeal Board*, 56 Pa. Commonwealth Ct. 505, 424 A.2d 1023 (1981), provides some precedential support for the referee's finding that the appellee's injury occurred on the day he was no longer able to work on account of the repeated injuries inflicted in the course of each earlier workday. In *Beaver*, we held that each day of work performed by a butcher after an earlier back injury was a compensable recurring daily aggravation of a preexisting injury and that the requirement of Section 315 of The Pennsylvania Workmen's Compensation Act[1] that claims for compensation should be filed "within three years after the injury" was satisfied by a claim filed within three years after the last aggravating injury sustained on the last day the claimant worked.

The appellee's work history and the history of his illness carefully spread upon this record amply sup-

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §602.

port the referee's finding. The ulcer was symptomatic of the daily work-related injuries when it appeared some weeks before the appellee was forced to leave his work; but the injuries continued each work day during the four to six weeks following and until, as the referee found, August 27, 1979.[2]

USF&G's second contention that the appellee should not have been awarded benefits for any period after November 19, 1980, because his doctor testified that but for the condition of the left foot the appellee could go to work, is somewhat disingenuous. The doctor testified only that if there were no problem with the left foot he, the doctor, would have the appellee "start attempting to go back to work." There is, moreover, record evidence that the crippled condition of the right leg, now fitted with a prosthetic device, has caused more pressure on the left foot causing its condition to deteriorate. The appellee testified:

Q: So with respect to your left foot, you do have a problem still with the deformity due to the Charcot's foot, and you still have arterial insufficiency as far as you know, is that correct?

A: The Charcot's foot in the beginning, when this one [foot] was taken off was not bad. It was starting to show some deformity. But as a result of having this leg off and having to go with all the pressure on this foot it caused it to get worse.

---

[2] The appellee recorded on his claim petition that the date of injury was August 19, 1979, on which date he testified the condition of his right foot was markedly worse than ever before and was such as to cause his doctors to advise him to have an arteriogram and to consider going into the hospital. He nevertheless continued to work until August 25 or 26. USF&G was on the coverage on August 19, 1979.

We find no error in the referee's refusal on this record to find the appellee was not disabled by the injury to his right foot on November 19, 1980.

Order affirmed.

ORDER

AND Now, this 19th day of July, 1983, the order of the Workmen's Compensation Appeal Board made July 1, 1982, is affirmed.