634 A.2d 714

**USAir, INC. and American Motorist Insurance Company, Petitioners,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (SCHWARZ), Respondent.**

Commonwealth Court of Pennsylvania.

Argued June 17, 1993.

Decided Nov. 23, 1993.

Mark J. Neuberger and Patricia L. Wozniak, for petitioners.

Joseph S. Hornack, for respondent.

Before McGINLEY and FRIEDMAN, JJ., and SILVESTRI, Senior Judge.

FRIEDMAN, Judge.

USAir, Inc. and its workmen's compensation insurance carrier, American Motorists Insurance Company, appeal an order

of the Workmen's Compensation Appeal Board (Board) which reversed a referee's order denying benefits to Gail Schwarz. We vacate and remand.

Schwarz has been employed by USAir as a flight attendant since the early 1970's. While on duty, she was required to wear high heels and be on her feet a large portion of the time. After working for USAir for several years, she began to experience pain in her feet. She went to various health providers for treatment of her feet, submitting the costs of that treatment of USAir's group health insurance plan. Eventually, the pain became so severe that Schwarz had surgery performed on both of her feet on October 16, 1989. On October 25, 1989, she informed USAir that the surgery was for a work related condition. Schwarz returned to work on January 1, 1990.

In March of 1990, Schwarz filed a claim petition, alleging that she was disabled for the period from October 16, 1989 until her return to work, as the result of a work related injury. Schwarz testified and described her work duties. Because her claim was for less than twenty-five weeks of compensation, Schwarz introduced a report of Dr. Steven J. Hutton, the surgeon who operated on her feet.[1] Dr. Hutton described Schwarz' problem as bilateral intermetatarsal neuromas (chronically inflamed nerves), which he excised during the surgery. Dr. Hutton also stated that "[t]he condition was possibly caused and *certainly aggravated* by prolonged standing and walking on hard surfaces in pump styled shoes all of which are required in her job as a flight attendant." (Letter of Dr. Hutton, 10/24/89.)

1. Section 422 of The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 835, provides:

> Where any claim for compensation at issue before a referee involves twenty-five weeks or less of disability, either the employe or the employer may submit a certificate by any qualified physician as the history, examination, treatment, diagnosis and cause of the condition ... and such statements shall be admissible as evidence of medical and surgical ... matters therein stated and findings of fact may be based upon such certificates or such reports.

The referee issued a decision and order on May 23, 1991, and therein made the following finding of fact:

9. Having reviewed the medical [testimony] supplied by the claimant and the claimant's testimony, it is this Referee's opinion that the claimant was well aware of her foot-related problems considerably before 120 days prior to her notice to the defendant on October 25, 1989 and, in fact, the claimant testifies that the time was closer to ten years prior to the date of the operation that she was aware she was having problems with her feet.

(Referee's decision and order, 5/23/91.) Based upon this factual finding, the referee dismissed the claim petition, concluding that because Schwarz was first injured some ten years earlier, she had failed to give timely notice as required by section 311 of the Act, 77 P.S. 631, which provides in pertinent part that "unless such notice [of the injury] be given [to the employer] within one hundred and twenty days after the *occurrence of the injury*, no compensation shall be allowed...."

■ Schwarz appealed to the Board. By an order of September 4, 1992, the Board reversed and awarded Schwarz compensation from October 16, 1989 to January 1, 1990. The Board based its order on the conclusion that Schwarz was required to give the notice required by section 311 within 120 days of her *loss of earning power*. USAir now seeks our review.[2]

■ USAir first argues that the Board erred when it relied upon *Jones & Laughlin Steel Corp. v. Workmen's Compensation Appeal Board (Glemzua)*, 35 Pa.Commonwealth Ct. 610, 387 A.2d 174 (1978) to support its conclusion that the notice required by section 311 began to run from the date that Schwarz actually became disabled; i.e., the date she lost earning power. We agree. The claimant in *Jones & Laugh-*

---

2. Because only Schwarz, the party with the burden of proof, presented evidence yet failed to prevail before the factfinder, the scope of review in this case is limited to determining if a constitutional violation occurred or an error of law was committed and ascertaining if the referee capriciously disregarded competent evidence. *McGarry v. Workmen's Compensation Appeal Board (Morrissey)*, 146 Pa.Commonwealth Ct. 594, 606 A.2d 648 (1992).

*lin,* unlike Schwarz, suffered from an *occupational disease* as set forth in section 108(k) of The Pennsylvania Occupational Disease Act[3]. Section 311 specifically provided then, as it does today, that, in cases of occupational disease, an "injury" occurs when the claimant becomes *disabled* from that disease. 77 P.S. § 631[4]. Schwarz admits that she did not attempt to prove that she suffered from an occupational disease; therefore, the Board erred in concluding that Schwarz' injury began when she was no longer able to work.

■ USAir next argues that the Board erred in concluding that Schwarz gave timely notice under section 311. As we have discussed, resolution of this dispute centers on when Schwarz was "injured" within the meaning of this section. USAir contends that the referee correctly determined that Schwarz' date of "injury" preceded her petition by over ten years.

In support of this argument, USAir refers to the following testimony by Schwarz on direct examination:

Q When did you first start experiencing pain with your feet?

A Oh, about fifteen years ago, I would say.

Q And did you seek any kind of treatment for that?

A Yes, within, oh probably the last ten years. The pain got so severe, I started to go to a podiatrist.

Q In (sic) what affect did your job have on your feet?

A Well, it just made—when I went to work, when I had to wear heels, when I had to stand for prolonged periods of time, it caused excruciating pain, and I had to keep going to the doctor for some kind of treatment.

---

**3.** Act of June 21, 1939, P.L. 566, *as amended,* 77 P.S. § 1208(k).

**4.** "In cases involving *other that occupational diseases,* [the 120 day period of section 311] begins to run when the injured employee knows, or reasonably should know, of the nature of his injury and its relationship to employment, regardless of whether the injured employee is disabled by the injury." *Leber v. Workmen's Compensation Appeal Board (Yellow Freight System),* 156 Pa.Commonwealth Ct. 491, 495, 628 A.2d 481, 484 (1993) (emphasis added).

Q   When you were off the job, was that pain alleviated at all?

A   Oh, yes.   I wasn't wearing heels.   I was wearing Reeboks or something to cushion my feet.

Q   Reeboks are what?

A   Tennis shoes.

Q   So when you weren't wearing high heels as part of your uniform, the pain was alleviated?

A   A lot of it, most of it, yes.

(Notes of Testimony, 5/1/90, pp. 6–7.)   On cross examination, the following occurred:

Q   What seemed to aggravate the condition?   Anything to you seem to aggravate the condition?

A   Yes, heels, standing long periods of time in heels.

Q   So you were suffering from this condition for at least ten years?

A   Well, more than ten years.   I would say 15, but before I went to the doctor, it was a while before I went to the doctor.

Q   And in your opinion, it was the job that was causing and aggravating the condition?

A   Yes.

(*Id.*, pp. 11–12.)

Given this testimony, USAir argues that the present case is controlled by *Bolitch v. Workmen's Compensation Appeal Board (Volkswagen of America, Inc.)*, 132 Pa.Commonwealth Ct. 110, 572 A.2d 39, *petition for allowance of appeal denied*, 526 Pa. 639, 584 A.2d 321 (1990).   In *Bolitch*, the claimant testified that she began experiencing back pain while at work on May 1, 1986.   She continued to work and was on vacation for the month of July, 1986.   When she returned to work in August 1986, the pain returned.   She saw an orthopedic surgeon on September 9, 1986, who told the claimant that she had a ruptured disc.   On September 11, 1986, after working for three hours, the claimant informed her employer of the work injury and left work.   The referee specifically found that

the claimant injured her back on May 1, 1986 and knew then that the injury was work related. The *referee specifically rejected her testimony that she suffered either a new injury or an aggravation* of the May 1 injury on September 11. The referee noted that the claimant's medical expert never offered an opinion as to when the disc actually ruptured. Thus, the referee dismissed the claim petition, concluding that the notice given by the claimant on September 11, 1986 was more than 120 days after her injury occurred on May 1, 1986 and so was untimely under section 311.

On appeal to this court, the claimant argued that the referee had erred in dismissing her claim petition, asserting, *inter alia,* that the referee's finding that she knew the May 1 injury was work related[5] was not supported by substantial evidence. We reviewed the claimant's own testimony and concluded:

A fair reading of the claimant's testimony establishes that claimant's back pain began at work on May 1, 1986, that the back pain continued for some period of time and that her work increased her pain. Under these facts, it is fairly obvious that the claimant should have known as of the date of her injury that her injury was work related. Consequently, we believe there is substantial evidence to support the referee's finding that the claimant knew of the nature of her injury and that it was work related on May 1, 1986.

*Bolitch,* 132 Pa.Commonwealth Ct. at 116, 572 A.2d at 43.

We concede that Schwarz' testimony, like that of the claimant in *Bolitch,* supports the referee's factual finding that Schwarz was aware that she was suffering from a work related injury for nearly ten years. This conclusion, however, does not end our inquiry.

■■■ Schwarz argues that her medical evidence proves that she essentially suffered a "new injury" each day that she went to work, relying on the medical report of her surgeon which clearly stated that Schwarz' condition "was . . . certainly ag-

5. We held that the 120 period in section 311 does not begin to run until an injured worker knows or should have known that an injury is work related. *E.J.T. Construction, Inc. v. Workmen's Compensation Appeal Board (Larusso),* 47 Pa.Commonwealth Ct. 492, 408 A.2d 226 (1979).

gravated" by her daily work duties. Schwarz' theory in this regard certainly is supported by precedent of this court.

In *Mancini's Bakery v. Workmen's Compensation Appeal Board (Leone)*, 155 Pa.Commonwealth Ct. 641, 625 A.2d 1308 (1992), the claimant had a preexisting knee problem which his doctor diagnosed as being aggravated by his work. In 1983, the claimant had arthroscopic surgery and thereafter continued to work despite his problems. He began to experience knee pain again in 1987; in 1988, he consulted with another doctor who confirmed that the claimant was suffering from the same preexisting knee problem. The doctor recommended surgery. Within a month, the claimant filed a claim petition. At the hearing, the medical experts testified that the claimant's work duties constantly aggravated the preexisting condition. The referee found the medical evidence to be credible and awarded benefits. On appeal, the employer contended that the claimant had failed to give timely notice under section 311 and had failed to file his claim petition within three years of the "injury" as required by section 315 of the Act. 77 P.S. § 602. The employer argued, as does USAir in the present case, that the claimant was aware of the "injury" when the original diagnosis was made in 1982. We rejected this argument, stating:

> The medical evidence presented by both parties clearly established, and the referee found, that Claimant was suffering from a preexisting condition aggravated by the requirements of his job. Each day that Claimant worked constituted a 'new' injury in that it further aggravated his condition. See Eddy [v. Workmen's Compensation Appeal Board (Bell Transit Inc.), 130 Pa.Commonwealth Ct. 306, 568 A.2d 279 (1989), petition for allowance of appeal granted, 525 Pa. 606, 575 A.2d 570 (1990) ]; McDevitt v. Workmen's Compensation Appeal Board (Ron Davidson Chevrolet), 106 Pa.Commonwealth Ct. 207, 525 A.2d 1252 (1987), petition for allowance of appeal granted, 518 Pa. 629, 541 A.2d 1140 (1988), appeal dismissed as improvidently granted, 520 Pa. 119, 552 A.2d 1048 (1989); Young v. Workmen's Compensation Appeal Board (Jones & Laughlin Steel

Corp.), 97 Pa.Commonwealth Ct. 356, 509 A.2d 945 (1986); Divine Providence Hospital v. Workmen's Compensation Appeal Board (Bonner), 75 Pa.Commonwealth Ct. 565, 462 A.2d 917 (1983); Beaver Supermarket v. Workmen's Compensation Appeal Board, 56 Pa.Commonwealth Ct. 505, 424 A.2d 1023 (1981).

*Mancini's Bakery*, 155 Pa.Commonwealth Ct. at 645–646, 625 A.2d at 1311. Thus, in *Mancini's*, we reasoned that because the claimant continued to work, thereby suffering daily aggravation of his condition, the last injury occurred on the last day of work and the requirements of both section 311 and section 315 were met.

In the present case, the referee failed to make findings of fact on the credibility of the medical evidence of Dr. Hutton that the claimant's condition was aggravated each day on the job. Rather, the referee merely restated the opinion of Dr. Hutton without passing on his credibility. Accordingly, a remand is necessary to permit the referee to perform his function as factfinder.[6]

Vacated and remanded.[7]

**6.** While we are permitted to affirm an order of an administrative tribunal whose reasoning was erroneous if the correct reasons are apparent from the face of the record, *Gregorious v. Workmen's Compensation Appeal Board (European Health Spas)*, 87 Pa.Commonwealth Ct. 86, 486 A.2d 564 (1985), this principle is inapplicable to the present case because of the necessity of credibility findings.

**7.** We must note that our recent case of *Brooks v. Workmen's Compensation Appeal Board (Anchor Glass Container)*, 155 Pa.Commonwealth Ct. 248, 624 A.2d 821 (1993) is distinguishable. In that case, the claimant was diagnosed as suffering from work related carpal tunnel syndrome in May of 1985. The claimant continued to work until the pain prevented him from doing so. He filed a claim petition in June of 1989, over four years after being made aware of the work related injury. We held that the claim petition was untimely under section 315. In that case, however, "the [medical] testimony indicated, and the referee found, that the cumulative effect of work-related circumstances on [c]laimant actually resulted in carpal tunnel syndrome, the injury, in 1985." *Brooks*, 155 Pa.Commonwealth Ct. at 252, 624 A.2d at 823. The claimant in *Brooks*, unlike either the claimant in *Mancini's* or Schwarz, presented no medical evidence to the effect that by performing daily work duties, claimant suffered a new injury each day on the job.

## ORDER

AND NOW, this 23rd day of November, 1993, the September 4, 1992 order of the Workmen's Compensation Appeal Board at No. A–91–1229 is vacated and the matter is remanded to permit the referee to make a credibility determination on the medical evidence of Dr. Steven Hutton.

Jurisdiction relinquished.

McGINLEY, Judge, concurring.

I agree with the perceptive conclusion that this record presents only unrebutted, facially trustworthy evidence of daily aggravation of a foot problem which may not be rejected by the referee without an adequate statement of the basis for that rejection, and I join therein. I write separately to point out that our cases which address the triggering of the statute of limitations (Section 315 of the Act, 77 P.S. § 602) and the 120–day period for providing notice to the employer of an injury (Section 311 of the Act, 77 P.S. § 631) are not consistent when the injury involved results from the cumulative effect of recurring, significant, miniature impacts.

The case that initially recognized the compensability of such injuries is *Hinkle v. H.J. Heinz Co.*, 462 Pa. 111, 337 A.2d 907 (1975). There a claimant who had worked for many years in a very noisy environment in the employer's can-making operation filed a claim petition requesting a determination of partial disability for his hearing loss. He had not lost time from work, but he claimed medical expenses and requested an order that his disability claim be suspended. Although the case was governed by the pre–1972 version of Section 301(c) of the Act, 77 P.S. § 411, which required a showing of an "accident" as opposed to "injury," the Court concluded that each outburst of noise contributed to the hearing loss and was a "miniature accident operating to break down the claimant's physical structure," *Hinkle*, 462 Pa. at 118, 337 A.2d at 910, which could constitute a compensable "accident" under Section 301(c). The Supreme Court expressly approved this court's conclusion that a partial loss of hearing is compensable under

Section 306(b) of the Act, 77 P.S. § 512, relating to disability partial in character, but reversed our determination that the claimant had failed to state a claim for a compensable accident.[1]

Gradual or cumulative-effect injuries have some of the characteristics of occupational disease. Gradual hearing loss bears a particularly close resemblance, resulting as it does from "exposure" to the hazard of excessive noise in the work environment and occurring such that the claimant "cannot definitely fix the date of the accident resulting in his disability, either because he cannot remember the precise time when the accident occurred or because the accident was of such a nature that there is difficulty in ascertaining when it happened." *Hinkle*, 462 Pa. at 118, 337 A.2d at 911.[2]

---

1. A claim for *complete* loss of hearing in one or both ears is compensable only as a specific loss under Section 306(c)(8) of the Act, 77 P.S. § 513(8), relating to schedule of compensation for disability from permanent injuries of certain classes. The Supreme Court explained in *Workmen's Compensation Appeal Board v. Hartlieb*, 465 Pa. 249, 348 A.2d 746 (1975), that under Section 306(c) it is the loss itself that is compensable (including complete loss of hearing) without regard to any loss of earning power. Disability from partial loss of hearing is compensable under either Section 306(a) or (b), 77 P.S. §§ 511 or 512, if there is a showing of total or partial loss of earning power caused by the partial hearing loss. *Nardone v. Workmen's Compensation Appeal Board*, 48 Pa.Commonwealth Ct. 360, 409 A.2d 945 (1980). Of course, Section 306(e), 77 P.S. § 531, provides for reasonable medical services, supplies etc. "whether or not loss of earning power occurs."

   Section 108 of the Act, relating to occupational diseases, 77 P.S. § 27.1, added by Section 1 of the Act of October 17, 1972, provides in the "omnibus clause," Section 108(n), that *for the purposes of that clause* partial loss of hearing shall not be considered an occupational disease. This provision does not preclude compensation for partial hearing loss, *see Hinkle* and *Hartlieb*, but it does preclude filing such a claim under the disease provisions of the Act. *But see Sun Oil Co. v. Workmen's Compensation Appeal Board (Davis)*, 144 Pa.Commonwealth Ct. 51, 53, 600 A.2d 684, 685 (1991): "The notice period is triggered on the date the claimant knows, or should know, that his hearing loss is severe enough to be compensable, i.e., is complete for all practical intents and purposes and that the hearing loss was caused by his employment."

2. In support of its determination that each outbreak of noise was a "miniature accident," the *Hinkle* Court quoted from 1A Larson, Workmen's Compensation Law, § 39.00 (1973), with supplied emphasis: "In the absence of definiteness in time of either cause or effect, as when

The discussion in *Hinkle* centered around the terms "accident" and "injury."[3] Because gradual loss of hearing from noise is not an occupational disease enumerated in Section 108 of the Act or in the similar provisions of Section 108 of The Pennsylvania Occupational Disease Act,[4] it is compensable only as an "injury" under Sections 306(a), (b) or (c) of the Act, 77 P.S. §§ 511, 512 or 513, and not as a "disease." Both Sections 311 and 315 provide, "The term 'injury' in this section means, in the case of occupational disease, *disability* resulting from occupational disease." (Emphasis added.) Thus in disease cases the date of "disability" triggers the notice and limitations periods, but for traditional (i.e., non-disease) injury claims the date of "injury" controls.[5]

In gradual loss of hearing cases for specific loss, our approach generally has been to regard the triggering of the periods for providing notice and for filing a claim petition to be the same as for specific losses in general: "[T]he date of injury is the date when the claimant is notified by a doctor of the loss of use of the member or faculty for 'all practical intents and purposes' and that the injury is job related in nature." *Eddy v. Workmen's Compensation Appeal Board*

repeated impacts or inhalations gradually produce disability, *many courts find accident by treating each impact or inhalation as a separate accident." Id.* at 118 n. 5, 337 A.2d at 911 n. 5.

3. The Court also characterized the cause of the hearing loss as "the constant hammering noise which it is alleged affected the bone structure and nerve endings in Hinkle's aural cavity." *Id.* at 119, 337 A.2d at 911.

4. Act June 21, 1939, *as amended,* P.L. 566, 77 P.S. § 1208.

5. "In cases involving other than occupational diseases, the 120–period of Section 311 begins to run when the injured worker knows, or reasonably should know, of the nature of his injury and that the injury is work related, regardless of whether or not the injured worker is disabled by the injury." *Bolitch v. Workmen's Compensation Appeal Board (Volkswagen of America, Inc.),* 132 Pa.Commonwealth Ct. 110, 118, 572 A.2d 39, 43, *petition for allowance of appeal denied,* 526 Pa. 639, 584 A.2d 321 (1990). *See also Workmen's Compensation Appeal Board v. Niemann,* 24 Pa.Commonwealth Ct. 377, 356 A.2d 370 (1976) (where the claimant's later-disabling neck injury suffered in an assault by a patient had not been diagnosed for some twenty months, the date of injury triggered the limitations period of Section 315, and a claim filed outside the then applicable sixteen-month period was untimely).

*(Bell Transit, Inc.)*, 130 Pa.Commonwealth Ct. 306, 310, 568 A.2d 279, 281 (1989), *petition for allowance of appeal granted*, 525 Pa. 606, 575 A.2d 570 (1990).[6] These cases therefore provide a special definition of "injury" applicable only to specific loss claims under Section 306(c). This special definition is very similar to the definition of injury in disease claims as the date of disability, including the special application of the discovery rules afforded to disease claims.[7]

6. *Eddy* and *Young v. Workmen's Compensation Appeal Board (Jones & Laughlin Steel Corp.)*, 97 Pa.Commonwealth Ct. 356, 509 A.2d 945 (1986), emphasize the distinction between the discovery rules in the notice provision, Section 311 of the Act, and the statute of limitations, Section 315. The former provides that notice must be given when the employee knows or reasonably should know of the existence of the injury and its possible relation to the employment except "in cases of injury resulting from ionizing radiation *or any other cause* in which the nature of the injury or its relationship to the employment is not known to the employee...." (Emphasis added.) The latter tolls the period for filing a claim only in cases of "injury resulting from ionizing radiation" where the nature of the injury or its relation to the work is not known. In *Jones & Laughlin Steel Corp. v. Workmen's Compensation Appeal Board (Feiertag)*, 90 Pa.Commonwealth Ct. 567, 496 A.2d 412 (1985), a case involving occupational disease claims under the Workmen's Compensation Act, the court applied the full discovery provisions of Section 311 to matters falling under Section 315, to avoid inconsistency with similar provisions of the Occupational Disease Act that do not commence the running of a period of limitations for a disease claim before the employee knows that the claim exists. *Eddy* and *Young* retain the very limited discovery provision of Section 315 in regard to non-disease injury claims.

7. The Supreme Court recently reemphasized in an *occupational disease* case that for claims for total disability under the Occupational Disease Act or the occupational disease provisions of the Workmen's Compensation Act, "In both instances a three year statute of limitations applies and in both instances we hold that the statute does not begin to run until 'pertinent medical diagnosis is completely established *to the knowledge* of the claimant' that his total disability is work related." *Price v. Workmen's Compensation Appeal Board*, 533 Pa. 500, 506, 626 A.2d 114, 117 (1993) (quoting *Ciabattoni v. Birdsboro Steel Foundry & Machine Co.*, 386 Pa. 179, 182, 125 A.2d 365, 367 (1956)). The standard is arguably very liberal in favor of claimants, because Section 315 (as well as Section 311) expressly requires that in cases where the discovery rule applies, "[T]he time for filing a claim shall not begin to run until the employee knows, or by the exercise of reasonable diligence should know, of the existence of the injury and its *possible* relationship to his employment." (Emphasis added.)

The *Price* holding is based primarily on the standard disease rationale that " 'an occupational disease is latent and insidious and the resultant

In *Dana Corp. v. Workmen's Compensation Appeal Board (Savage)*, 75 Pa.Commonwealth Ct. 474, 462 A.2d 900 (1983), we held two claimants' petitions for total loss of hearing filed in 1979 to be timely under Section 315, although the employer produced evidence that their hearing was monitored beginning in 1971. The claimants were aware of their progressive hearing loss and had reason to believe it was due to noise at work, but they were not told the results of the 1971 tests, and they were not told that they had lost their hearing for all practical intents and purposes due to their employment until they were examined in 1979. *See also Universal Cyclops Corp. v. Workmen's Compensation Appeal Board (Cherry)*, 97 Pa.Commonwealth Ct. 399, 509 A.2d 956 (1986) (doctor's deposition provided substantial evidence to support a finding that initial medical examination in 1981 was the first time claimant discovered the full extent of his hearing loss and that it was work-related); *Cyclops Corp., Cytemp Specialty Steel Division v. Workmen's Compensation Appeal Board (Sray, Jr.)*, 116 Pa.Commonwealth Ct. 421, 541 A.2d 851 (1988); *Sun Oil Co. v. Workmen's Compensation Appeal Board (Davis)*.

In *Martin v. Workmen's Compensation Appeal Board (Jones & Laughlin Steel Corp.)*, 111 Pa.Commonwealth Ct. 201, 533 A.2d 810 (1987), a steelworker's doctor informed him of a work-related hearing loss in 1979 and prescribed hearing aids. Following another examination in 1983, the claimant filed a claim petition. In view of testimony from the doctor that the claimant's hearing was poor in 1979 and only a little poorer in 1983, the referee found that the claimant suffered a loss of hearing for all practical intents and purposes in 1979, and his claim was barred. We found ample evidence to support the referee's findings and affirmed. We distinguished *Dana Corp.* on the grounds that the testimony there showed that the hearing loss was progressive, and the claimants were not informed of the work-relatedness of their injury until they

disability is often difficult to determine.' " *Id.* at 506, 626 A.2d at 117 (quoting *Ciabattoni*, 386 Pa. at 184, 125 A.2d at 368). It has no direct application to non-disease cases.

were first examined by a doctor shortly before they filed their claims.

More recently, this court sustained another employer's challenge to a claim for total loss of hearing based on failure to provide notice within 120 days pursuant to Section 311. In *Hermanson v. Workmen's Compensation Appeal Board (Kaiser Aluminum)*, 156 Pa.Commonwealth Ct. 556, 628 A.2d 514 (1993), the claimant filed a claim petition in 1989 alleging a total loss of hearing on March 31, 1986. That was his last day of employment after thirty-four years working as a hammerman's helper. The employer offered into evidence a purchase contract showing that the claimant had obtained hearing aids as of October 17, 1985. The claimant contended that he was not aware that his condition was compensable and work-related until after he saw a doctor in January of 1989. The referee found that the claimant knew at least by October of 1985 that his loss of hearing was such as to require hearing aids and of its relation to his employment; that his hearing problem did not get worse after he retired in 1986; and that he did not allege or prove that his hearing problem increased between October of 1985 and March of 1986. The referee dismissed the claim for failure to provide notice under Section 311 or to file timely under Section 315, and the Board affirmed.

This court affirmed the Board, pointing to the claimant's purchase of hearing aids in 1985 and his testimony that he knew in his mind since 1979 that he had a significant hearing loss (which caused him to cease such activities as going to the theater) and that it was related to his work. This court distinguished the situation in *Cyclops Corp.*, where, although the claimant knew over a period of years that his hearing was deteriorating, the court found that it was only upon the advice of his physician that he realized that he had a substantial, work-related hearing loss. *Hermanson* therefore keyed the triggering of the notice and filing periods to the *personal belief of the claimant*, and it imposed a burden on him to prove a deterioration of his condition up to the last day of exposure to noise at work.

Another category of cumulative-effect injuries involves those caused by small traumas from repetitive motions. These generally have been treated as conceptually the same as cases involving gradual loss of hearing from noise, but only to a certain extent. In *Workmen's Compensation Appeal Board v. Hamilton*, 21 Pa.Commonwealth Ct. 425, 346 A.2d 387 (1975), the claimant's work involved repeated overhead striking of a plastic-molding machine with a wooden mallet to loosen the finished product. The claimant developed "epicondylitis" of the right arm as a work-related, gradual process. She sought medical attention and filed a claim as soon as she experienced pain in her arm. The referee acknowledged the condition but concluded that no "accident" had taken place. Relying on *Hinkle*, this court reversed, concluding that the repeated overhead hammering activity was analogous to repeated outbursts of noise. *See also Capitol Area Transit Co. v. Workmen's Compensation Appeal Board (Duncan)*, 77 Pa.Commonwealth Ct. 435, 466 A.2d 249 (1983) (medical testimony established that claimant bus driver's hemorrhoids, abscess and fistula were caused and aggravated by repeated minimal injuries from his work; date of injury was last day of employment).

In *Leber v. Workmen's Compensation Appeal Board (Yellow Freight System)*, 156 Pa.Commonwealth Ct. 491, 628 A.2d 481 (1993), a different result occurred. There a dockworker/forklift operator developed numbness and tingling in his arm and saw a doctor in June of 1990. The doctor told him that he had work-related carpal tunnel syndrome. The claimant continued to work without further treatment. In February of 1991 the claimant reported the injury to the employer and on the advice of another doctor stopped working and underwent surgery. In April he filed a claim petition. Relying on the *Bolitch* principle that in traditional injury cases the date of injury controls, even if it is not immediately disabling, the court concluded that the record supported the finding that the claimant had knowledge sufficient to trigger his responsibility to provide notice in 1990 and affirmed the dismissal of the petition for failure to do so. Therefore, where the claim-

ant had the benefit of a medical diagnosis earlier, the court implicitly refused to apply the daily aggravation of existing injury approach and use the date of injury as the last day of employment. Similarly, in *Brooks v. Workmen's Compensation Appeal Board (Anchor Glass Container)*, 155 Pa.Commonwealth Ct. 248, 624 A.2d 821 (1993), the claimant received a diagnosis of work-related carpal tunnel syndrome in 1985, but he kept working. The condition worsened and in 1988 he had an operation and filed a claim. We held the date of injury to be 1985. *Dana Corp.* was distinguished on the basis that unlike circumstances of progressive hearing loss nothing in the record suggested "that the nature of the injury in the instant case presents any special difficulty as far as indicating a single moment in time when the injury has occurred." *Brooks*, 155 Pa.Commonwealth Ct. at 254, 624 A.2d at 824.

A related category of cases concerns claimants who continue to work after suffering a specific work-related injury, with resulting aggravation of that injury. In *Firestone Tire & Rubber Co. v. Workmen's Compensation Appeal Board*, 40 Pa.Commonwealth Ct. 142, 396 A.2d 902 (1979), an employee suffered an elbow fracture at work in 1966 but had no loss of earnings and did not file a claim. In late 1974 or early 1975 he reported elbow problems to employer's nurse, and he underwent surgery in May of 1975. His doctor testified that his condition was "tardy ulnar palsy" caused by the 1966 injury plus the repetitive minimal trauma to the nerves from his daily work use of his arm. We concluded that the referee erred in finding no compensable injury in 1974 or 1975. Although there was no specific injury other than that in 1966, "It is clear that an injury to be compensable under the Act is not required to have resulted from any sudden occurrence or accident but may be due to daily trauma or a daily aggravation of a pre-existing injury." *Firestone Tire & Rubber Co.*, 40 Pa.Commonwealth Ct. at 146, 396 A.2d at 904 (citing *Hinkle* and *Hamilton*). In *Beaver Supermarket v. Workmen's Compensation Appeal Board*, 56 Pa.Commonwealth Ct. 505, 424 A.2d 1023 (1981), a butcher's original back injury without loss of earnings began a long period of recurring

problems and treatments leading ultimately to a spinal fusion that left him totally disabled. Relying on *Firestone Tire & Rubber Corp.*, the court concluded that where the claimant's doctor testified to continual aggravation of the back condition from his work activities the referee erred in finding that there was no injury at the time the claimant stopped working. In addition, the court stressed that the claimant suffered no "disabling injury" until the time of the operation. *See also Sheetz v. Workmen's Compensation Appeal Board (Firestone Tire & Rubber Co.)*, 104 Pa.Commonwealth Ct. 411, 522 A.2d 146 (1987), *petition for allowance of appeal denied*, 530 Pa. 667, 610 A.2d 46 (1992) (where a claimant had a history of back surgery, his doctor's testimony that later disc herniations were compatible with his work duties was sufficient to establish later work-related injury).

In *McDevitt v. Workmen's Compensation Appeal Board (Ron Davison Chevrolet)*, 106 Pa.Commonwealth Ct. 207, 525 A.2d 1252 (1987), *appeal dismissed as improvidently granted*, 520 Pa. 119, 552 A.2d 1048 (1989), a car salesman, who suffered from a non-work-related tendency to fall, fell at work and fractured his shoulder. He returned to work some five weeks later and worked four months. His petition, filed shortly before three years after his last day of work, alleged an injury as of his last day, although it also stated that the injury occurred at the time of fracture and that he left work because of pain from that injury. The referee granted benefits on the basis that the claim had been filed within three years of the date of disability, but the Board reversed on the ground that the date of injury rather than disability controlled. This court rejected the claimant's argument that he suffered an injury in the form of aggravation of his shoulder injury each day that he worked after the accident. We noted that no medical testimony supported that contention and stated that the mere fact that the claimant may have used his arm and shoulder in the course of his work was not sufficient to show that he suffered an aggravation. We affirmed.

Cases closely related to the above are those where a claimant's non-work-related injury or medical condition is aggravat-

ed by work activities. In *Divine Providence Hospital v. Workmen's Compensation Appeal Board (Bonner)*, 75 Pa.Commonwealth Ct. 565, 462 A.2d 917 (1983), the claimant, an emergency room doctor, suffered from a non-work-related disease of the nerves and arterial insufficiency of his lower limbs. His standing and walking for long periods in the course of his duties aggravated his condition, eventually causing an ulcer on the foot, which led to amputation. The court held that no one event caused the injury; rather, each day's work contributed, and the date of injury was the last day that the claimant worked.

In *Mancini's Bakery v. Workmen's Compensation Appeal Board (Leone)*, 155 Pa.Commonwealth Ct. 641, 625 A.2d 1308 (1993), the claimant bakery truck driver had arthritic knees. He told a doctor in 1982 that his knee pain was aggravated by his work activity. In 1988 he filed a claim, and he had knee replacements in 1989 and 1990. The court held that there was no Section 315 problem because every day's work constituted a new aggravation. We found no failure to provide notice under Section 311 because, although the claimant knew of the correlation between his work duties and his pain in 1982, the doctor did not tell him then that his work was a substantial contributing factor to his condition. Also, each new day of work was a new aggravation.

Claimant in the present case argues that this court consistently has treated cumulative-effect injuries like occupational diseases for the purpose of determining the date of injury by holding that it is the date of disability, i.e., the date when the condition finally causes the employee to stop working and so to lose earnings, citing *Firestone Tire & Rubber Co., Divine Providence Hospital* and *Hinkle*, among others. She notes that in *Pollard v. Workmen's Compensation Appeal Board (North Strabane Township)*, 131 Pa.Commonwealth Ct. 339, 570 A.2d 143, *petitions for allowance of appeal denied*, 525 Pa. 665, 583 A.2d 794, 795 (1990), a police officer was promoted to the position of officer-in-charge, and the extra stress eventually resulted in disabling anxiety and depression, causing him to resign some four years later. On reconsideration the Board

rejected the officer's claim on the basis of failure to file timely under Section 315. This court reversed, concluding that the Board's reliance on *McDevitt* was misplaced:

> [T]his ruling ... where the claim was for a single trauma, a fall at work causing a fractured shoulder, can have no application to a case such as this one where the cumulative effect of work-related events or circumstances results in a final disabling basis for a claim which is the 'injury' that triggers the running of the statute of limitations.

*Pollard*, 131 Pa.Commonwealth Ct. at 342–43, 570 A.2d at 144–45 (footnote omitted, citing *Divine Providence Hospital, Beaver Supermarket, Firestone Tire & Rubber Co.* and others).[8]

The determinations in these types of cases must necessarily be highly fact-specific and small differences in medical testimony can produce drastically different results. Specific loss of hearing cases constitute a special category. They are treated like occupational disease for discovery purposes under both Sections 311 and 315, requiring a precise communication to the claimant of the extent of the loss and of its work-relatedness. This communication may occur after the last day of work, *Cyclops Corp.*, or before, *Martin.*[9] *Hermanson* arguably failed to apply this rule. Although the opinion

8. *Pollard* was decided after the Supreme Court approved the current approach to mental injury claims in *Martin v. Ketchum*, 523 Pa. 509, 568 A.2d 159 (1990), with the requirements that a claimant pinpoint the cause of the alleged injury and show that the injury is other than a subjective response to normal working conditions. *Compare Arthrell v. Workmen's Compensation Appeal Board (Pennsylvania State Police)*, 154 Pa.Commonwealth Ct. 633, 624 A.2d 686 (1993), where the claimant had an underlying but not formerly disabling psychological problem. He proved three specific instances of abnormal working conditions that aggravated his problem, but he did not stop working because of his mental condition and file a claim until more than three years after the last incident. This court affirmed the conclusion of the referee and the Board that the date of injury was the last occurrence of an abnormal working condition, and the claim was not timely filed within three years of that date.

9. As the Supreme Court explained in *Hartlieb*, the nature of specific loss compensation as compensation for the *loss* of the faculty or member, without regard to disability, makes it uniquely more similar to civil tort recovery than to workers' compensation tied to loss of earning power.

emphasizes that the claimant purchased hearing aids years before he filed his claim, it does not indicate or rely on evidence that he did so on the advice of a doctor after receiving a diagnosis of work-related specific loss of hearing.

Apart from hearing cases, the overall difficulty is the recurring attempt to impose an "injury" analysis on occupational injuries that are insidious in origin and progress much like an occupational disease. Non-hearing continuous trauma cases are generally treated as repeated new injuries or aggravations. The last day of employment or the last day of work before medical treatment is usually identified as the date of "injury." *See Hamilton; Capitol Area Transit.* The multiple small traumas that lead to carpal tunnel syndrome, e.g., are not readily distinguishable from the multiple assaults on the ears of hearing loss victims, but the cases are treated differently. The assumption of a "new injury" or "aggravation" as of the last day of work extends the time for filing, but it also precludes claimants (except in "ionizing radiation" cases) from filing a claim when the claim matures at some later time for purposes of Section 315.

As with hearing cases, the existence of an early medical diagnosis without further action by the claimant generally defeats the claim. This is true even where the court acknowledges that (as is usual) the condition does get worse after the earlier diagnosis but before the claimant finally seeks treatment, as in *Leber* and *Brooks*. The cases do not adequately explain why subsequent obvious aggravations are not treated as new injuries even after a diagnosis. Although employers certainly have an interest in learning of such matters at the earliest possible date the penalty of dismissing otherwise meritorious claims because the claimant continues to work with pain after a diagnosis is very unfair and not within the spirit of the Act.

Cases involving ongoing aggravation of previous injuries also have been inconsistently reviewed. In *Firestone Tire & Rubber Corp., Beaver Supermarket* and *Sheetz* this court readily concluded that the last day of work was the last aggravation of previous elbow or back injuries. In *McDevitt*

we concluded that the date of the shoulder fracture was the date of "injury" and rejected the claimant's assertions that pain during subsequent work activities was an aggravation. In contrast, *Mancini's Bakery* found the last day of work to be the date of last aggravation despite evidence that the claimant informed a doctor years earlier of his awareness of the relation between his work activities and increased pain in his arthritic knees.

I believe we must establish a uniform approach to these types of cases and that claimants suffering work-related injuries similar to the one here should receive benefits.

SILVESTRI, Senior Judge, dissenting.

I disagree with the majority's conclusion that although Schwarz's testimony supports the referee's finding that Schwarz was aware of her work related injury for nearly ten years, yet failed to notify Employer, the matter should, nonetheless, be remanded for findings as to whether Schwarz suffered daily aggravation of her condition and, therefore, timely gave notice as each day she worked constituted a "new injury." As I do not agree with the majority that our decision in *Mancini's Bakery v. Workmen's Compensation Appeal Board (Leone)*, 155 Pa.Commonwealth Ct. 641, 625 A.2d 1308 (1993) applies to this matter, I would simply reverse the Board's determination and reinstate the referee's decision and order finding that Schwarz failed to provide Employer timely notice of her work-related condition as required by Section 311 of the Pennsylvania Workmen's Compensation Act.[1] Accordingly, I dissent.

Section 311 clearly specifies as follows:

Unless the employer shall have knowledge of the occurrence of the injury, or unless the employe or someone in his behalf, or some of the dependents or someone in their behalf, shall give notice thereof to the employer within twenty-one days after the injury, no compensation shall be due until such notice be given, and, unless such notice be given within one hundred and twenty days after the occur-

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 631.

rence of the injury, no compensation shall be allowed. *However, in cases of injury* resulting from ionizing radiation or any other cause *in which the nature of the injury or its relationship to the employment is not known to the employe, the time for giving notice shall not begin to run until the employe knows, or by the exercise of reasonable diligence should know, of the existence of the injury and its possible relationship to his employment.* (Emphasis added).

The language of Section 311 is clear that when the relationship of the injury to the employment is not known to the employee, the 120-day notification period does not begin to run until the employee either knows or should know of such relationship. *See E.J.T. Construction, Inc. v. Workmen's Compensation Appeal Board (Larusso),* 47 Pa.Commonwealth Ct. 492, 408 A.2d 226 (1979). Once an employee has knowledge or should have knowledge of the relation of the injury to ones employment, the 120-day period commences. *See Bolitch v. Workmen's Compensation Appeal Board (Volkswagon of America, Inc.),* 132 Pa.Commonwealth Ct. 110, 572 A.2d 39, *petition for allowance of appeal denied,* 526 Pa. 639, 584 A.2d 321 (1990).

In *Bolitch,* cited by the majority, this Court, in reviewing a claimant's testimony who argued that she notified her employer in a timely fashion of her work related injury, stated the following:

A fair reading of the claimant's testimony establishes that claimant's back pain began at work on May 1, 1986, that *the back pain continued for some period of time and that her work increased her pain.* Under these facts, it is fairly obvious that the claimant should have known as of the date of her injury that her injury was work related. Consequently, we believe there is substantial evidence to support the referee's finding that the claimant knew of the nature of her injury and that it was work related on May 1, 1986. (Emphasis added).

*Bolitch,* 132 Pa.Commonwealth Ct. at 116, 572 A.2d at 43.

Here, there is no question that Schwarz admitted, and the referee found, that she was aware of the relation of her injury

to her employment ten years prior to her notifying Employer of said relationship. As set forth by the majority, Schwarz testified as follows:

Q. When did you first start experiencing pain with your feet?

A. Oh, about fifteen years ago, I would say.

Q. And did you seek any kind of treatment for that?

A. Yes, within, oh probably the last ten years. The pain got so severe, I started to go to a podiatrist.

Q. In (sic) what affect did your job have on your feet?

A. Well, it just made—when I went to work, when I had to wear heels, when I had to stand for prolonged periods of time, it caused excruciating pain, and I had to keep going to the doctor for some kind of treatment.

Q. When you were off the job, was that pain alleviated at all?

A. Oh, yes. I wasn't wearing heels. I was wearing Reeboks or something to cushion my feet.

Q. Reeboks are what?

A. Tennis shoes.

Q. So when you weren't wearing high heels as part of your uniform, the pain was alleviated?

A. A lot of it, most of it, yes.

(R.R. 6–7).

. . . .

Q. What seemed to aggravate the condition? Anything to you seem to aggravate the condition?

A. Yes, heels, standing long periods of time in heels.

Q. So you were suffering from this condition for at least ten years?

A. Well, more than ten years. I would say 15, but before I went to the doctor.

Q. And in your opinion, it was the job that was causing and aggravating the condition?

A. Yes.

(R.R. 11–12).

There is no dispute, based upon Schwarz's testimony, that Schwarz had knowledge of the relation of her injury to her work for "more than ten years" prior to notifying Employer of said condition and that she failed to comply with the notice mandate set forth at Section 311 of the Act. I would reverse the Board's order and reinstate the order of the referee.