**LESLIE FAY COMPANIES and State Workmen's Insurance Fund, Petitioners**

v.

**WORKERS' COMPENSATION APPEAL BOARD (MACALUSO and ITT Hartford), Respondents.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 11, 2004.

Decided July 15, 2004.

Michael D. Yelen, Wilkes–Barre, for petitioner.

Barbara L. Hollenbach, Allentown, for respondent, ITT Hartford.

Neil T. O'Donnell, Wilkes–Barre, for respondent, G. Macaluso.

BEFORE: PELLEGRINI, Judge, COHN, Judge, FLAHERTY, Senior Judge.

OPINION BY Judge COHN.

Leslie Fay Companies (Employer), through its insurer, State Workmen's Insurance Fund (SWIF), appeals an order of the Workers' Compensation Appeal Board (Board) that affirmed a Workers' Compensation Judge's (WCJ) decision that granted a claim petition filed by Gloria Macaluso (Claimant). The Board's order also modified the WCJ's decision and directed that SWIF reimburse Employer's former carrier, ITT/Hartford (ITT) for any benefits ITT had previously paid to Claimant.[1] On appeal, SWIF asserts that the facts do not support a finding of either an injury or work-related disability that can be attributed to it, that the WCJ's decision is not "reasoned," and that even if SWIF were deemed liable, ITT should obtain reimbursement from the supersedeas fund, not in the form of a credit against SWIF.

This case has a long history involving three claim petitions, two different insurance carriers, two prior WCJ decisions, each followed by a Board remand due to inconsistent findings that rendered those adjudications "unreasoned," a third WCJ adjudication, and ultimately, a final order issued by the Board and appealed here. Fundamental to the case is the fact that the WCJ found only portions of each of the two medical expert's testimony credible and then wove those findings together to support his conclusions. The central inquiry is whether the credible testimony provides substantial evidence to support the findings as to the date of a work-related injury and the date of a work-related disability.

The pertinent facts are that Claimant, who was employed as a seamstress, filed three claim petitions. In the first claim petition, filed April 29, 1996, she alleged a work-related injury in the nature of a "Swollen and inflamed thumb joint—sore hand." She identified "September 1993" as the date of the injury and named ITT as the carrier. She filed the second and third claim petitions ten days later. In both of these later petitions she described her injury as "Swollen and Inflamed thumb joint." However, in one she alleged an injury date of September 9, 1993, and, again, named ITT as the carrier, while in the other she alleged an injury date of September 5, 1995 and named SWIF as the carrier. The three petitions were consolidated for hearing.[2] She did not identify in any petition to which thumb she was referring (i.e., right or left) and in all of the petitions she sought only payment of a single medical bill, although at the hearings she submitted evidence as to an entitlement to disability benefits as well.

In his first adjudication, the WCJ concluded that Claimant had not proved a left thumb injury occurring in 1993, but did prove a right thumb injury on a date not specified in the adjudication, resulting in a disability in September 1995. On appeal by SWIF, the Board found that the factual findings were "inconsistent and incongruent" and as a result concluded that the decision was not a reasoned one. It, thus, remanded the matter to the WCJ for clarification.

On remand, the WCJ again found that Claimant had failed to meet her burden to prove that she sustained a September 1993 disabling injury to her *left* thumb. He did find, however, that she had met her bur-

---

1. It is not disputed that ITT was the carrier until April 1, 1995, when Employer switched from ITT to SWIF. Employer's plant closed on June 19, 1995.

2. ITT also filed a joinder petition, seeking to join SWIF in the petitions where ITT was alleged to be the responsible carrier. This petition was ultimately dismissed and ITT has not appealed that ruling.

den to prove a disability as of September 16, 1996 to her *right* thumb as a result of cumulative repetitive trauma. He determined, inexplicably, that **both** carriers were responsible, but then also stated that ITT was the responsible carrier and directed it to pay benefits. Both insurers appealed to the Board. The Board found it was unable to reach the issues raised on appeal because, once again, the adjudication contained conflicting and inconsistent findings and conclusions. Therefore, it remanded the matter for the second time.[3]

On second remand, the WCJ found that Claimant sustained an injury in the nature of *left* basilar joint arthritis with synovitis, on September 9, 1993, the date she was diagnosed with this condition, but that she suffered no disability (*i.e.*, work loss) due to that injury and had recovered from it as of September 1995. ITT was the responsible carrier in 1993, but since there was no 1993 disability, no payments were assessed against it. The WCJ also found that Claimant sustained a second injury, on June 19, 1995, which was Claimant's last day of work due to Employer closing its plant. He found that this injury was to Claimant's *right* thumb and described it as "arthrosis, with tenosynovitis and possible median nerve entrapment." (WCJ Adjudication of July 31, 2002, Finding of Fact (FOF) 12B.) He also reaffirmed an earlier finding that the disability was a result of

cumulative trauma. (FOF 15). He determined that Claimant was disabled as of September 16, 1996, the date her condition was diagnosed, and found that SWIF was the responsible carrier. (FOF 12C, D.) SWIF again appealed to the Board, which affirmed, after concluding that this time, the WCJ's findings did support the conclusion and that his decision was a reasoned one. As noted earlier, the Board also modified the WCJ's order by ordering SWIF to reimburse ITT for any compensation benefits the latter had paid to Claimant "while Defendant SWIF was on the risk, and to begin paying Claimant thereafter." (Board Adjudication of December 10, 2003, p. 14.)

SWIF now appeals to this Court.[4] It first argues that Claimant has not met her burden to prove that SWIF was the responsible carrier because the evidence cannot support a finding of a work-related injury during the period of its coverage, which began on April 1, 1995, and ended when the plant closed, on June 19, 1995. It also argues that the evidence does not support a finding of a September 16, 1996 disability date. We consider these issues in tandem, after first setting forth the evidence critical to those findings.

To establish both the June 19, 1995 injury date and the September 16, 1996 disability date, the WCJ relied on the testi-

3. Because the WCJ's findings are no longer relevant and were confusing, we forego reiterating them here.

4. Our scope of review where, as here, both parties have presented evidence is limited to whether the findings of fact are supported by substantial evidence and whether there has been any constitutional violation or legal error. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa. Cmwlth.436, 550 A.2d 1364 (1988). Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to

support a conclusion. *York Terrace/Beverly Enterprises v. Workmen's Compensation Appeal Board (Lucas)*, 140 Pa.Cmwlth.75, 591 A.2d 762, 764 n.5 (1991).

In a claim petition proceeding where a claimant seeks ongoing benefits into the future, she bears the burden of proving that she suffered an injury while in the course of her employment and that she remains disabled due to that injury. *Inglis House v. Workmen's Compensation Appeal Board (Reedy)*, 535 Pa. 135, 634 A.2d 592 (1993).

mony of Dr. John C. Querci, D.O., who first examined and evaluated Claimant on September 16, 1996. He diagnosed her with "arthrosis of both thumb areas with the tenosynovitis and positive, possible median nerve entrapments." (Deposition of Dr. Querci, p. 15). The doctor was then asked the following question:

> Doctor, do you have an opinion within a reasonable degree of medical certainty as to whether the conditions you've diagnosed are causally related to the work injury of September 1993?

He replied:

> Yes, I believe they are, and that they progressed from that time on.

*Id.* He also testified that Claimant's condition was progressive, chronic, permanent and disabling and that she could never return to her seamstress job. While the WCJ accepted as credible most of what this witness testified to, he specifically *rejected* as not credible Dr. Querci's "attempts to find and conclude that the claimant sustained a work related injury on September 9, 1993." (WCJ Adjudication of July 31, 2002, FOF 13.) The WCJ specifically stated that he rejected this evidence because the doctor had also opined that Claimant's condition was progressive

and that her increased symptoms were caused by years of performing repetitive motion activity. It is within this factual matrix that we now examine the date of injury and the date of disability.

SWIF asserts first that the evidence does not support the WCJ's finding as to the date of injury for the right thumb. As noted above, the WCJ found that the date of this injury was June 19, 1995, Claimant's last day at work due to a plant closing. He also found that the injury was in the nature of a repetitive trauma. In cases involving repetitive trauma, each day that a claimant works constitutes a new injury. *USAir, Inc. v. Workmen's Compensation Appeal Board (Schwarz),* 160 Pa.Cmwlth.100, 634 A.2d 714 (1993). If a claimant continues working, thus suffering a new injury each day, the injury date is the last day the claimant works. *Id.* Accordingly, it was proper for the WCJ to find that Claimant's repetitive trauma injury was a new injury, rather than a recurrence of an old injury for which ITT would be liable, and that it occurred on Claimant's last day of work.[5]

SWIF also argues that the fact that Dr. Querci testified regarding injuries to *both* thumbs, as did Claimant, supports a find-

---

5. Our disposition of this issue also answers SWIF's assertion that for cumulative trauma injuries the date of injury is either the date of diagnosis or the date of disability. In making this argument, SWIF relies on *Brooks v. Workmen's Compensation Appeal Board (Anchor Glass Container),* 155 Pa.Cmwlth.248, 624 A.2d 821 (1993), which we distinguished in *USAir.* We stated:

> In [*Brooks*], the claimant was diagnosed as suffering from work related carpal tunnel syndrome in May of 1985. The claimant continued to work until the pain prevented him from doing so. He filed a claim petition in June of 1989, over four years after being made aware of the work related injury. We held that the claim petition was

untimely under section 315. In that case, however, "the [medical] testimony indicated, and the referee found, that the cumulative effect of work-related circumstances on [c]laimant actually resulted in carpal tunnel syndrome, the injury, in 1985." *Brooks,* 155 Pa.Commonwealth Ct. at 252, 624 A.2d at 823. The claimant in *Brooks,* unlike either the claimant in [other case law, including *USAir*], presented no medical evidence to the effect that by performing daily work duties, claimant suffered a new injury each day on the job.

*USAir,* 634 A.2d at 717–718 n. 7. Here too, unlike in *Brooks,* the evidence does indicate daily injuries.

ing of a recurrence, not a new injury. However, the WCJ specifically rejected that evidence, crediting instead the evidence of Dr. Mark W. Scinico, ITT's medical expert, who opined that the left thumb problem resolved in September 1995. As we have often observed, it is solely the role of the WCJ to assess credibility and resolve conflicts in the evidence and he, alone, determines the weight of the evidence and may reject the testimony of any witness in whole or in part. *Hoffmaster v. Workers' Compensation Appeal Board (Senco Products, Inc.)*, 721 A.2d 1152 (Pa. Cmwlth.1998). Thus, the testimony does support a new injury.

■ Next, SWIF argues that the evidence does not support a finding of a work-related disability on September 16, 1996 because Claimant actually worked up until the day the plant closed and did not present evidence that her injury worsened after that time. We disagree. Dr. Querci's testimony was clear that her condition worsened daily and her deterioration continued due to cumulative trauma experienced on the job. Thus, the facts that she worked until the plant closing and that when she originally filed her claim petitions she sought only payment for medical bills because she was then able to work, are not dispositive of the question of when she became disabled. The WCJ clearly used the date of Dr. Querci's diagnosis as the date of disability. SWIF recognizes in its brief that, depending on the facts, courts sometimes use the date of diagnosis as the date of the disability. (SWIF's Brief, p. 13). *See, e.g., Brooks v. Workmen's Compensation Appeal Board (Anchor Glass Container)*, 155 Pa.Cmwlth.248, 624 A.2d 821 (1993). Thus, we find no error in employing the date of diagnosis as the date of disability.

SWIF's next argument is that the WCJ failed to issue a reasoned decision. It identifies three specific points that it asserts indicate that the decision was not a reasoned one: 1) the WCJ provided no explanation for using the last day of work rather than the date of diagnosis for his finding of June 19, 1995 as the injury date; 2) the WCJ provided an insufficient explanation for his distinction between left-sided and right-sided symptoms; and 3) the WCJ's use of the date of diagnosis as the injury date for the left-sided injury and last date of work as the injury date for the right-sided injury is inconsistent and not sufficiently explained.

■ Section 422 of the Workers' Compensation Act (Act) Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 834, provides in pertinent part:

> All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The workers' compensation judge shall specify the evidence upon which the workers' compensation judge relies and state the reasons for accepting it in conformity with this section. When faced with conflicting evidence, the workers' compensation judge must adequately explain the reasons for rejecting or discrediting competent evidence. Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the workers' compensation judge must identify that evidence and explain adequately the reasons for its rejection. The adjudication shall provide the basis for meaningful appellate review.

"[A] decision is 'reasoned' for purposes of Section 422(a) if it allows for adequate review by the [Board] without further elucidation and if it allows for adequate review by the appellate courts under applicable review standards." *Daniels v. Workers' Compensation Appeal Board (Tristate Transport)*, 574 Pa. 61, 76, 828 A.2d 1043, 1052 (2003).

■ SWIF argues first that the WCJ provided no explanation for using the last day of work, rather than the date of diagnosis, for his finding of June 19, 1995 as the injury date. However, as previously explained, because there is a legal basis for identifying the last day of work as the date of injury in cumulative trauma cases, which is what the WCJ did, no further explanation was needed.

■ Second, SWIF argues that the WCJ failed to explain why he distinguished between right-sided and left-sided injuries, when there was evidence that Claimant had ongoing bilateral problems. However, the WCJ's adjudication is clear that he accepted the testimony of Dr. Scinico, that Claimant had a left thumb injury, but it had resolved as of September 1995, and he specifically rejected testimony to the contrary, including that of Claimant. It was within the WCJ's province to do so. *Hoffmaster.* Thus, his decision was reasoned as to this point.

■ Third, SWIF argues that the WCJ's use of the date of diagnosis as the injury date for the left-sided injury, but his use of last date of work as the injury date of injury for the right-sided injury is inconsistent. The Board observed that, although Claimant did sustain a left thumb injury in 1993, she fully recovered from it

and there was never any period of disability. Therefore, the WCJ's use of the date of diagnosis as the date for the left thumb injury was not erroneous. Further, based on our previous discussion, we have already decided that the assignment of the diagnosis date as the disability date for the right thumb injury was also proper, since the WCJ found that the injury was due to cumulative trauma. Consequently, we perceive no impermissible inconsistency in using the date of diagnosis as the injury date for the left-sided injury, but the last day of work as the date of injury for the right-sided cumulative trauma injury.

■ As its final issue, SWIF asserts that even if it is held to be the responsible carrier, the Board should not have ordered it to pay benefits to ITT, but rather should have directed ITT to seek reimbursement from the supersedeas fund. It relies on Section 443(a) of the Act, which pertinently states that:

(a) If, in any case in which a supersedeas has been requested and denied under the provisions of section 413 or section 430, payments of compensation are made as a result thereof and upon the final outcome of the proceedings, it is determined that such compensation was not, in fact, payable, the insurer who has made such payments shall be reimbursed therefor.

77 P.S. § 999(a) [6].

■ The general rule is that an employer will not usually be granted a credit *against a claimant.* Torrey and Greenberg, Pennsylvania Workers' Compensation Law and Practice § 6.70 (2002). Rather, an employer should seek reimbursement from the supersedeas fund. *Id.*

6. This Section was added by Section 3 of the Act of February 8, 1972, P.L. 25.

The purpose of that fund is to protect an insurer who makes payments that are, ultimately, determined not to have been owed. *Rogers v. Workmen's Compensation Appeal Board (Strouse/Greenberg)*, 129 Pa. Cmwlth.230, 565 A.2d 209 (1989). "The [l]egislature recognized that recoupment *from the claimant* was impractical and would undermine the benevolent purposes of the [a]ct." *Id.* at 211 (emphasis added). In the case *sub judice,* however, no credit was assessed against Claimant. Rather, the crediting issue involves one insurer, in essence, reimbursing the other. The appropriateness of such a remedy on these narrow facts does not violate the benevolent purposes of the Act and does not appear to be precluded by Section 443(a). Thus, we conclude that such a remedy is within the Board's discretion. Therefore, we decline to alter this portion of its order.

Because we conclude that the findings of fact were adequately supported and that the WCJ's most recent decision was a reasoned one, we affirm the order of the Board.

### ORDER

NOW, July 15, 2004, the order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby affirmed.